No. 46,933

Lynn Welch, Earl Allen Schmidt, P. D. Smith and Charles Wilbur Russell, on Behalf of Themselves and All Other Resident Electors in the High School Attendance Center of Disorganized Barton County, Kansas, School District No. Joint A, *Appellees*, v. Board of Education of Unified School District No. 495, Pawnee County, Kansas, et al., *Appellants*.

(512 P. 2d 358)

Opinion filed July 14, 1973.

*Glee S. Smith,* of Larned, argued the cause, and *Donald L. Burnett,* of Larned, was with him on the brief for the appellant.

*Walter F. Stueckemann,* of Jetmore, argued the cause, and *B. A. Lightfoot,* of Jetmore, was with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from a district court order enjoining appellants, the board of education of Unified School District No. 495 and its individual members, from discontinuing grades nine through twelve of the school at Pawnee Rock, and directing them to continue operating those grades until the electors of Pawnee Rock Disorganized School District No. Joint A consent to such discontinuance. Appellees are resident electors of the disorganized district. We shall hereafter refer to the appellant unified board and its members in the singular.

Prior to school unification, Pawnee Rock District No. Joint A, a rural high school district, and Pawnee Rock District No. 2, a common school district, joined in constructing one school building at Pawnee Rock to be used by both districts. Each district issued bonds for the construction. The common school district took legal title to the site upon which this building is located, which they were permitted to do under the provisions of K. S. A. 72-507 (now repealed). Before unification the common school district operated grades one through eight in one wing of the building and the high school district operated grades nine through twelve in another wing. Parts of the building and equipment were used by both the grade school and high school; other parts were used by only one of the districts. Upon unification, more than three-fourths of the territory and more than three-fourths of the tangible property valuation of each district were merged into Unified School District No. 495. After unification and until the decision to discontinue

grades nine through twelve, the unified district continued to conduct grades one through twelve in the building in a manner similar to the operation prior to unification with grades one through eight in one wing and grades nine through twelve in another.

The old Joint A and the No. 2 districts comprised distinct geographic areas, the territory of each being only partially included within the boundary of the other.

February 17, 1972, appellant by resolution decided to discontinue grades nine through twelve at Pawnee Rock. This decision was made without first obtaining the consent of a majority of the electors in the old high school district. Appellees filed suit June 15, 1972, in which they requested an order of mandamus directing appellant to continue grades nine through twelve or, in the alternative, an injunction preventing appellant from discontinuing grades nine through twelve. Appellees' suit challenged the decision to discontinue the high school grades on the ground such action constituted a closing of an "attendance facility" in violation of the provisions of K. S. A. 72-8213.

Appellant moved thereafter for summary judgment, asserting the pleadings indicated as a matter of law that appellees were not the real parties in interest and contending that appellees' petition failed to state a claim upon which relief could be granted. After answers to interrogatories and requests for admission of facts were filed and after hearing arguments at a pretrial conference, the trial court took the motion under advisement. On August 21, 1972, the court issued a memorandum decision denying appellant's motion and, on its own motion, granting summary judgment for appellees. It found in effect that the building at Pawnee Rock constituted two separate attendance facilities and its judgment enjoined appellant from discontinuing grades nine through twelve and ordered appellant to operate those grades until the electors of the high school district consented to such discontinuance either by vote or written petition. Appellant then filed in this court an application for stay of execution of the judgment and for supersedeas bond, and on September 14, 1972, this court entered its order staying and suspending the injunction and order during the pendency of this appeal.

Appellant now challenges the trial court's decision upon four separate grounds. It first reasserts its position that summary judgment should have been granted in its favor on the basis of certain allegations made in its answer and not denied in appellees' reply. Appellant points out the answer denied that the high school district,

District No. Joint A, owned the attendance facility in question. Appellant denied such ownership because legal title to the site upon which the building is located was placed in the common school district. Appellant argues that since appellees' reply did not allege ownership by the high school district and since appellees are bringing this action as electors of the high school district, they have no interest in the building in question which is protected by K. S. A. 72-8213.

We cannot agree with this contention. Appellees' petition did allege they have a special and peculiar interest in the matter not common to the public generally and that they are members of a class benefited and protected by the provisions of K. S. A. 72-8213.

The building in question was built in 1954-1955 pursuant to K. S. A. 72-507 (repealed in 1969) which permitted a common school district located wholly or partly within the boundary of a rural high school district to unite with the high school district in the construction of a school building for the joint use of both such school districts. Issuance of bonds by each district for the purpose of constructing such building was authorized. Another statute (K. S. A. 72-8131) provides that upon unification any balance of bonded indebtedness of any disorganized district merged into the unified district shall remain a charge upon the territory of the disorganized district. K. S. A. 72-507 contained this fruther proviso:

"Legal title to the site or sites upon which such joint building or buildings are located may be taken in the name of either or both of such districts, but the beneficial ownership of such building or buildings shall inure to each district in the proportion which its contributon to the total cost of the building or buildings and all capital improvements thereon bears to such total cost."

Disorganized School District No. Joint A did contribute substantially to the total cost of the building and therefore has a proportionate beneficial ownership in the building. Such an interest is sufficient ownership to give electors of the district standing to challenge the discontinuance of the high school grades.

Appellant contends also that summary judgment in favor of appellees was not proper because there remained disputed material facts. Appellant does not, however, identify such facts. The record reveals that although there may have been minor discrepancies in some of the facts asserted by each, they agree on those essential to disposition of the case.

Both parties agree the school building in question was built, financed, and used by the two separate school districts; the com-

mon school district operated grades one through eight in one wing and the high school district operated grades nine through twelve in another wing. Both agree more than three-fourths of the territory and more than three-fourths of the tangible property valuation for each of these two school districts became unified in USD No. 495 and that the unified school district voted to discontinue grades nine through twelve without first obtaining the consent of the electors residing in the disorganized high school district.

Appellant served appellees with a request for admission of facts. Appellees' answers to this request present a fairly comprehensive picture of the cooperation between the two school districts in constructing and holding classes in the one building. Appellees admitted that the following facilities were used in common by teachers and students of both schools: Boiler and standby boiler, electric meter and switch boxes, sewage system, water system, hot water steam heating system, kitchen and cafeteria, vault and record room, fire alarm system, band and vocal room trophy cases, athletic field, athletic equipment, trash burner, bus storage building, athletic maintenance equipment, bus loading zone and flag pole. Appellees' answers denied common use of the following facilities: Gymnasium and auditorium, administrative offices, public address system, master clock, guidance and counseling room, ticket booth, pay telephone, art room, soft drink machine, athletic concession stand, maintenance equipment, professional catalogue reference rack, school yard, maintenance room and fresh air circulation system. Appellees' answers also indicated the plans for the building showed they were to be of "Pawnee Rock Grade School and High School Building"; that the plans showed the structure to be one building with a grade school wing and a high school wing; a joint account for both schools was used to pay the costs of building the school; warrant checks drawn on the joint account were issued under the name "Pawnee Rock, Kansas Joint No. 2 Rural Joint A Building Fund," and were signed by the treasurer and clerk of the District Joint No. 2 and by the director and clerk of District Joint No. A; the building was rated and insured for casualty as a single building; the contract to build was entered into jointly by both school districts as a single contract. The answers denied, however, that the joint bank account continued to be used by both school districts for repairs, maintenance and equipment until school unification; that the fire marshal inspects and treats the building as a single build-

ing and that all fire drills were jointly conducted by both schools at the same time.

In all of this, despite the denials upon which appellant apparently relies for its contention of prematureness of summary judgment, we see no dispute as to any material fact and therefore hold that the case was ready for final disposition.

Appellant's next contention, and the central issue raised in this appeal, is a challenge to the trial court's interpretation and application of K. S. A. 72-8213. We quote that part pertinent here:

"(a) The board shall not close any attendance facility that was being operated at the time the unified district was organized if at least three-fourths (¾) of the territory and at least three-fourths (¾) of the taxable tangible valuation of the district which formerly owned such building is included in such unified district unless and until a majority of the resident electors within the attendance center of such attendance facility shall give their consent thereto. Such consent may be given in writing in the form of a petition, or the board may submit the question to a vote of such resident electors in the attendance center at an election which shall be conducted in the same manner as for approval of bonds of the unified district. If a majority of those voting on the question vote in favor thereof, the same shall constitute consent for the purpose of this section. The board may close any attendance facility at any time except as is otherwise provided in this act. For the purpose of this section the following terms shall have the following meanings: The term 'attendance facility' means a school building which has been property of school district disorganized pursuant to this act, but which, at the time under consideration, is owned by the unified district. The term 'attendance center' means the area around an attendance facility consisting of the territory in such district of the disorganized district which formerly owned such attendance facility.

. . . . . . . . . . . . . . .

"(e) Nothing in this section shall be deemed to restrict or limit the authority of any board to change the use of any attendance facility, so long as at least three (3) high-school grades, three (3) junior high-school grades, or six (6) elementary school grades are offered in such attendance facility. . . ."

Appellant asserts the joint building constitutes only one "attendance facility"; since the school building is one attendance facility and since grades one through eight would continue to be conducted even though grades nine through twelve were discontinued, appellant's decision to discontinue grades nine through twelve was a change in use permitted by subsection (e) of K. S. A. 72-8213 rather than a closing. Appellees contend the joint school building constitutes two "attendance facilities", one owned by the common school district and the other by the high school district; that dis-

continuance of grades nine through twelve is therefor a closing of the high school attendance facility which, without consent of the resident electors of the disorganized high school district, violates subsection (*a*) of K. S. A. 72-8213.

Only two of our decisions, *Hand v. Board of Education*, 198 Kan. 460, 426 P. 2d 124, and *Hensley v. Board of Education of Unified School District*, 210 Kan. 858, 504 P. 2d 184, deal with the particular statutory prohibition against closing an attendance facility with which we are presently concerned. Neither compels any particular disposition of the present case; however, some expression in the former may well be noted. In *Hand* discontinuance by a unified school district board of four grades of high school in buildings at McCune was prohibited by this court. There, prior to unification, the buildings had housed an elementary school and a high school operated, as here, by a common school district and a rural high school district. The action was brought on behalf of the resident electors of the disorganized high school district, a majority of whom had never given consent to the discontinuance as required by the provisions of then existing K. S. A. 72-6756. This statute was the predecessor of 72-8213 and for purposes here was virtually identical to it except it did not contain subsection (*e*). Although the relief granted the plaintiffs in *Hand* was not grounded on the fact that the high school itself constituted a separate attendance facility, we had this to say:

" 'Attendance facility' as used in K. S. A. 72-6756 refers to any high school, junior high school or elementary grade school." (Syl. ¶ 2.)

Turning to the language of the present statute we find a starting point for our analysis in the definition of "attendance facility", already quoted.

Appellant emphasizes that part of the definition which states an attendance facility means "a school building. . . ." It asserts one building, even though constructed and operated prior to unification by two districts, cannot constitute more than a single attendance facility. It says a single attendance facility can have two attendance centers but the converse is not true.

Appellees stress the latter part of the statutory definition—"a school building *which has been property of school district disorganized pursuant to this act*. . . ." They assert one school building can constitute more than one attendance facility if it has been the property of more than one disorganized district. We agree.

Related statutory provisions are to be considered together and in their entirety in determining legislative intent (5 Hatcher's Kansas Digest, rev. ed., Statutes, § 77; 9 West's Kansas Digest, Statutes, §§ 205, 206). Examination of that part of K. S. A. 72-8213 with which we are presently concerned reveals it hinges upon ownership of an attendance facility, that is, its restrictions on closure are applicable only when a major portion (at least three-fourths of the territory and taxable tangible valuation) of the district which formerly *owned* such building is included in a unified district. When such major portion of the disorganized district is so included, an attendance facility cannot be closed without consent of a majority of the resident electors within the attendance center served thereby. The definition of the latter bears repeating:

"The term 'attendance center' means the area around an attendance facility consisting of the territory in such unified district of the disorganized district *which formerly owned such attendance facility.*" (Emphasis added.)

The restrictions placed in that which is now 72-8213 against closing an attendance facility were for the purpose of retaining some vestige of local control in connection with school reorganization and unification (*Hand v. Board of Education,* supra). This local control is reserved in that major portion of the disorganized district which *formerly owned* the building sought to be closed, namely, those electors resident within the *attendance center* of such building or facility. It is these persons whose assent is necessary to closure of an attendance facility. Thus it is rights of former ownership which are the focal point of protection by the statute. We have already noted the ownership interest of appellees in the building by reason of 72-507 at the time it was being operated as a high school by Joint District A. A dual type ownership of a building was specifically recognized and authorized by the legislature at the time it enacted 72-8213. It would appear then that the legislature must have had in mind that one building can constitute two separate attendance facilities under circumstances where, as here, two *separate school districts* serving different territories have conducted separate classes in the building prior to unification, and we so hold. Consequently, appellant's decision to discontinue all high school grades at Pawnee Rock was a decision to close the attendance facility formerly owned by the disorganized high school district. The trial court correctly concluded such action could not be taken without the consent of the resident electors within the high school attendance center.

Finally, as an alternative if other specifications of error are not upheld, appellant urges that the trial court's order mandating continuance of *four* grades of high school (nine through twelve) in the building at Pawnee Rock was overbroad and beyond the protection afforded by 72-8213 (*e*). It asserts that even if the building is treated as containing two separate attendance facilities, appellant may lawfully "change the use" of the wing constituting the disorganized high school attendance facility by conducting therein, at its option, either three junior high school grades (seven through nine) or three high school grades (ten through twelve). Appellant indicates that as a matter of economy its choice would be to conduct three junior high grades therein, leaving six elementary grades (one through six) in the wing constituting the common school facility.

We must agree with appellant's contention. Subsection (*e*) does permit the board of a unified district to "change the use" of any attendance facility so long as at least three high school grades, three junior high school grades or six elementary school grades are offered in such facility. As pointed out in *Hensley v. Board of Education of Unified School District,* supra, subsection (*e*) was added by the legislature in direct response to our decision in *Hand.* In *Hensley* we also noted that such change in use does not constitute a closing of the facility and consent of the electors within the attendance center is not required. To do that which appellant seeks as a last alternative has been specifically authorized by the legislature and may not be judicially proscribed. Accordingly, the trial court erred in requiring continuance of four years of high school and its judgment must be modified to conform to the statute, as requested by appellant.

As so modified in accordance with the views herein expressed, the judgment is affirmed.

APPROVED BY THE COURT.