No. 47,110

City of Kansas City, Kansas, *Appellant,* v. Board of County Commissioners of Wyandotte County, Kansas, *Appellee,* and City of Piper City, Kansas, *Intervenor-Appellee.*

(518 P. 2d 403)

Opinion filed January 26, 1974.

*Wm. C. Karnaze,* assistant city attorney, argued the cause, and *Donald E. Martin,* city attorney, was with him on the brief for the appellant.

*Thomas C. Lysaught,* county counselor, argued the cause for the appellee, and *Louis A. Silks, Jr.,* Shawnee Mission, argued the cause for the intervenor-appellee, and both were on the brief for the appellees.

The opinion of the court was delivered by

Fromme, J.: A direct appeal challenging the lawfulness of proceedings to incorporate Piper City was filed in the district court under K. S. A. 1972 Supp. 15-126. The district court approved the legality of the proceedings and an appeal to this court followed.

The incorporation proceedings were initiated by residents of Prairie Township in Wyandotte County, Kansas, under K. S. A. 15-115, *et seq.* The Board of County Commissioners of Wyandotte County issued an order incorporating Piper City. The city of Kansas City which lies adjacent to the territory involved filed an appeal

for review in the district court. The statute which now authorizes appeals to review orders of incorporation was enacted by the legislature in 1967. It has not previously been interpreted by this court. The statute provides:

"Any person who shall have an interest in and be aggrieved by the decision of the board of county commissioners under the provisions of K. S. A. 15-115, *et seq.*, may appeal to the district court of the same county in the same manner and method provided for by K. S. A. 19-223. Upon appeal the district court shall have jurisdiction to affirm or, if the court is of the opinion that the decision of the board was arbitrary, unlawful, or capricious, to reverse the decision complained of or direct the county commissioners to take proper action." (K. S. A. 1972 Supp. 15-126.)

The order of the district court affirming the decision of the board is attacked on appeal on the ground the decision of the board was unlawful in that no notice of hearing as required by K. S. A. 15-119 was given. The district court not only affirmed the lawfulness of the incorporation but in addition held that the city of Kansas City was not an authorized "person" under 15-126, *supra*, to bring such an appeal to the district court. Therefore, it will become necessary to consider this threshold question of proper party appellant before we examine the notice question.

Before examining these questions some background facts should be noted. Prairie Township is located in the extreme northwest corner of Wyandotte County. The small unincorporated community of Piper is located on less than eighty acres in the southeast portion of the township. The territory of Prairie Township which the petitioners seek to incorporate covers approximately 9,600 acres of land. This area has a total population of 693 people with slightly over 200 dwelling units within the territory. Over 92% of the area is devoted to woodlands and agricultural uses. Only 186 of the 9,600 acres have been platted into subdivisions.

Kansas City, which lies to the east and south of this area, has continued to expand its boundaries by annexation proceedings until it now lies adjacent to the area. Further annexation proceedings were initiated by the city to include portions, if not all, of Prairie Township. An annexation ordinance was placed on first reading. Further action by Kansas City to annex the area is now restrained by court order.

On August 23, 1971, the petition to incorporate these 9,600 acres as a third class city was filed with the board of county commissioners in accordance with the provisions of K. S. A. 15-116 as amended.

The legal sufficiency of this petition is not questioned. It is apparent the residents of the Piper community initiated the incorporation proceedings and obtained the restraining order against annexation to prevent Kansas City from engulfing their little community. However, regardless of where the court's sympathy may lie, the power to create municipal corporations is a legislative power. (*Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451.) The legislature placed such creative power with the board of county commissioners subject to certain statutory requirements. In reviewing the proceedings of the county commissioners this court cannot concern itself with the advisability of the incorporation. Our review must be restricted to judicial matters such as the construction of statutes and the application of the statutes to the facts of this case.

With the foregoing in mind we turn to the threshold question of whether the city of Kansas City was a proper party to initiate the appeal to the district court under 15-126, *supra.*

Our attention is called to *Lampe v. City of Leawood,* 170 Kan. 251, 225 P. 2d 73, and related cases decided by this court prior to the effective date of 15-126, *supra.* It is held in those cases that the legislative functions of a board of county commissioners are not subject to review in a direct appeal in the district court. The rationale of those decisions is based on the separation of powers doctrine under which direct judicial review of legislative functions simply does not exist absent a statute authorizing the same. (cf. *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 510 P. 2d 132.) It is held in *Lampe* that absent a review statute actions questioning the validity of the proceedings incorporating a third class city can only be prosecuted in collateral proceedings at the instance of the state by its proper officers. The legislature saw fit in 1967 to authorize a direct review. In doing so it quite properly limited the judicial review provided in 15-126, *supra,* to the question of whether the action of the board was arbitrary, capricious or unlawful. The challenge made here is on the ground of procedural unlawfulness of the incorporation, one of the statutory grounds. Therefore the rule in *Lampe* does not apply.

Our attention is also directed to *State, ex rel., v. City of Kansas City,* 186 Kan. 190, 350 P. 2d 37; *State, ex rel., v. City of Overland Park,* 192 Kan. 654, 391 P. 2d 128; *Babcock v. City of Kansas City,* 197 Kan. 610, 419 P. 2d 882. It is held in those cases that one municipality cannot question the organization, or reorganization, of another municipality for such action constitutes a collateral

attack upon the integrity of the municipality which can only be initiated by the state through its proper officers. The rule in those cases applies to collateral attacks and does not relate to direct review proceedings such as is authorized by 15-126, *supra*.

It is contended that the city of Kansas City is not within that class of persons authorized by the statute to initiate review proceedings. The statute as quoted above provides that *any person who shall have an interest in and be aggrieved by the decision* may appeal. Appellees point to several statutes, and to the cases interpreting them, where it has been held municipal corporations are not included within the general meaning of the word "persons" as used in those particular statutes. Other statutes and cases reaching a contrary result could be cited but we do not consider either group of cases persuasive as to the present statute.

The rules of statutory construction recognize that the word person may be extended to municipal corporations unless such construction would be inconsistent with the manifest intent of the legislature. K. S. A. 77-201 in pertinent part provides:

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

. . . . . . . . . . . . . .

"*Thirteenth.* The word 'person' may be extended to bodies politic and corporate."

In making a decision as to the manifest intent of the legislature we must consider together and in their entirety all related statutory provisions bearing upon the incorporation of third class cities. (*Welch v. Board of Education,* 212 Kan. 697, Syl. ¶ 2, 512 P. 2d 358; see also *Gnadt v. Durr,* 208 Kan. 783, Syl. ¶¶ 2, 3, 494 P. 2d 1219; and *City of Overland Park v. Nikias,* 209 Kan. 643, Syl. ¶ 2, 498 P. 2d 56.)

The statutes with which we are presently concerned require notice of hearing to be sent to the city clerk of any city whose area is within five miles of the nearest boundary of the territory described in the petition. (See K. S. A. 15-119.) At the hearing before the commissioners any such city shall be entitled to be heard and to present documentary information and briefs. (See K. S. A. 15-120.) In making a decision on incorporation the board of county commissioners shall consider the effect of the proposed action on adjacent areas, the willingness of the city to annex the territory and other related factors. (See K. S. A. 15-121.) K. S. A. 15-123, as amended, further provides if the territory is within five miles of

an existing city the unanimous vote of the commissioners is required for an order of incorporation. These statutes recognize that a city may be an interested party in the proceedings.

Under the foregoing provisions of the statutes we see nothing inconsistent or repugnant in extending the word "person" as used in 15-126, *supra*, to include a city. The statutes recognize that the economic interests of such cities may be affected by such incorporation proceedings. It appears manifest the legislature intended the term "any person" as used in K. S. A. 1972 Supp. 15-126 to include existing cities any portion of whose area is within five miles of the nearest boundary of the territory to be incorporated, provided any such city has an interest in and would be aggrieved by the decision on incorporation.

In order for a city to appeal it is not sufficient under 15-126, *supra*, for the city to show it is within the five mile zone. The statute requires more. In order for an appeal to be taken the appellant must have an interest in and be aggrieved by the decision. We feel in the present case the city of Kansas City meets these additional conditions. The territory sought to be incorporated was adjacent to Kansas City on both the west and the north. The city began annexation proceedings to include a portion, if not all, of the territory within its boundaries. Further expansion of the city in the direction of the Piper community might be permanently foreclosed by the decision on incorporation. Under these circumstances the city of Kansas City did have sufficient present interest in the territory to be interested and aggrieved by the decision. It was a proper "person" within the meaning of the statute to file the appeal in the district court.

We now turn to the question of whether the incorporation proceedings were lawful, *i. e.*, in substantial compliance with the requirements of the statutes.

The hearing on the petition for incorporation was scheduled by the county commissioners to be held on October 18, 1971, at 8:00 o'clock p. m. at the Piper Junior High School, Piper, Kansas. There are two statutes relating to the manner and form of the notices of the hearing to be given. The first provides:

"The county clerk shall cause a copy of the petition, without the signatures, and a notice of the time and place of the hearing to be published once in the official county newspaper of each county in which any of the territory lies and the publication shall be not less than fifteen (15) days before the hearing.

Notice of the hearing shall also be posted in not less than three (3) public places in the territory not less than fifteen (15) days before the hearing." (K. S. A. 15-118.)

This notice was given by publication and by posting. No particular persons are designated in this statute to receive notice. The statutory requirement of publication and posting is similar to the requirements of various election notices. Where irregularities in such notices are considered by the courts not to frustrate or prevent the free expression of the electors' intentions, nor otherwise mislead them, it is generally held that substantial compliance with this type of notice statute is sufficient. See *West v. Unified School District*, 204 Kan. 29, 460 P. 2d 103, and similar cases cited therein.

However, in the incorporation of third class cities the following additional notice statute was added by the legislature:

"The county clerk shall, not less than fifteen (15) days before the hearing, send notices of the hearing with a copy of the petition, without the signatures, [1] to the county clerk of any other county in which any part of the territory lies, [2] to the clerk, secretary or chairman of any duly constituted city, county, regional or metropolitan planning commission exercising planning authority over all or part of the territory, [3] to the director of the division of planning of the state department of economic development, and [4] to the city clerk of any city, any portion of whose area is with[in] five (5) miles of the nearest boundary of the territory as described in the petition." (K. S. A. 15-119.)

This notice statute is more specific in nature and, in addition to the publication and posting, it requires notice of the hearing and a copy of the petition, omitting the signatures, to be sent to certain designated officials. The official capacities of those named indicate they are to receive notice on behalf of their commission, department or city. After receiving the notice these commissions, departments or cities then have time to officially determine what action, if any, they desire to take at the hearing.

It is agreed in this case that the provisions of K. S. A. 15-119 were overlooked by the county clerk and that they were not complied with. The appellees argue that the city had constructive notice of the hearing by the publication and posting. In addition they point to evidence that Pat Hanlon, a city commissioner, was advised by telephone of the meeting and did attend. We do not question the district court's finding that the officials named in K. S. A. 15-119 knew of the hearing held on October 18, 1971, by reason of general publicity which attended the meeting. It does not appear, however, whether they acquired this information a reasonable time before the hearing or whether they learned of it afterwards. We are faced

with the question of the legislative intent expressed in the statutes. The legislature employed the phrase "The county clerk shall, not less than fifteen (15) days before the hearing, send notices . . ." The word "send" contemplates dispatching a notice in writing. We pointed out in *City of Overland Park v. Nikias,* supra, that a statutory requirement to "file" a notice of appeal under K. S. A. 22-3609 (2) as amended contemplates the filing of a written notice of appeal. (See Syl. ¶ 3 and opinion at p. 647.) The notice requirement in K. S. A. 15-119 contemplates either personal delivery or mailing of a written notice of hearing. This was not even attempted by the county clerk in our present case.

The appellant argues the statute is mandatory while the appellees contend it is directory. All parties cite *Wilcox v. Billings,* 200 Kan. 654, 438 P. 2d 108; *State v. Brown,* 205 Kan. 457, 470 P. 2d 815, and *Paul v. City of Manhattan,* 212 Kan. 381, 511 P. 2d 244, for rules of construction in support of their respective positions.

It should be kept in mind the words mandatory and directory as applied to the construction of a particular provision in a statute are merely descriptive of the effect that it has been decided to give the provision. The mandatory "shall" appears in both K. S. A. 15-118 and 15-119, but that is not a hard and fast identifying mark which can foretell the character to be assigned to any statutory provision. (See *Shriver v. Board of County Commissioners,* 189 Kan. 548, 556, 370 P. 2d 124; and *Curless v. Board of County Commissioners,* 197 Kan. 580, 586, 419 P. 2d 876.) It can safely be said that the legislature does not intend any statutory provision to be totally disregarded. So, when the consequences of not obeying a particular statute are not prescribed by the legislature, as in the present case, the court must decide the consequences. In determining the consequences of failure to comply with a statute courts necessarily consider the importance of the literal and punctilious observance of the provision in question with regard to the ultimate object which the legislature sought to serve. (2A Sutherland Statutory Construction [4th Edition], § 57.01, p. 412.)

Generally in construing the effect of noncompliance with a statute courts first inquire into the purpose behind the statutory provision. This is one of the first steps in treating the problem. (See *Koehler v. Ball,* 2 Kan. 160, 173; and 5 Hatcher's Kansas Digest, Revised Edition, Statutes, § 73, pp. 157, 158.) The notice provision overlooked by the county clerk appears to be supplemental to the provision requiring publication and posting. By this additional requirement

the legislature recognized that the publication and posting under K. S. A. 15-118 is not alone sufficient and may be totally ineffectual. The legislature intended that personal notice be given to the officials designated in K. S. A. 15-119. The obvious purpose of this personal notice requirement appears in the statutes which follow the notice provision. Cities within the five mile zone are entitled to be heard and to present documentary information and briefs as provided in K. S. A. 15-120. K. S. A. 15-123 provides that the unanimous vote of the county commissioners is necessary to order the incorporation where an existing city is within the five mile zone. K. S. A. 15-121 requires the commissioners to consider many factors bearing upon the economic development of the existing cities. Such cities should be given an opportunity to present such factors at the hearing. In the final sentence of this latter statute the legislature indicates it may be desirable in certain areas "to prevent an unreasonable multiplicity of independent municipal governments." This is a concern which the city of Kansas City might wish to present to the board.

It does not appear from the record that the city commissioners met in official session to consider the matters affecting their city on this petition for the incorporation. Prior to the time the county commissioners set the hearing date the three city commissioners did attend an informal meeting in Piper in an attempt to discourage further proceedings to incorporate the Piper community. They were not later advised of the formal hearing date. They did not authorize a spokesman to speak for the city. The county, although knowing of their interest, failed to give personal notice. No documentary information or briefs were presented at the hearing. The one city commissioner who attended the meeting did so in response to a telephone call. He took no part in the hearing and it does not appear he was authorized to do so. Under the circumstances none of the manifest purposes for which the notice in K. S. A. 15-119 is required were accomplished.

The county commissioners did not have minutes taken of the hearing on October 18. It does not appear whether the hearing was terminated at that time or not. No further formal hearings on the incorporation appear to have been scheduled. A special meeting of the county commissioners was called on November 23, to finally determine the matter. At that time with the three county commissioners, the county clerk, a deputy county clerk and the county counselor present the attorney was directed to prepare the necessary documents to incorporate Piper City. The following day the order

incorporating the territory was signed. In view of the record of these proceedings and the extended litigation which has ensued it is difficult for this court to accept the appellee's argument that the city of Kansas City had sufficient notice of the hearing on October 18, and intentionally failed to appear and oppose the incorporation.

The creation of a municipal corporation may be either valid, void or voidable. The creation in the present case was neither valid nor void. It was at most voidable on direct attack. In 1 McQuillin, Municipal Corporations, 3rd Edition, § 3.45, at pp. 313, 314, the differences are explained as follows:

". . . Where an attempt is made to incorporate so as to create a municipal corporation, the result may be either that (1) there is a wholly valid municipal corporation, or (2) there is a wholly invalid municipal corporation which is void, or (3) there is a de facto corporation which is valid unless directly attacked by the state [or in Kansas by those authorized by 15-126, *supra*]. In other words, an attempt to create a municipal corporation may create (1) a de jure corporation, (2) a de facto corporation, or (3) an organization which is neither a de jure corporation nor a de facto corporation. In case of corporations wholly valid, an attack on their corporate existence, so far as creation is concerned, is unavailing. In case of de facto corporations, they are not subject to attack ordinarily except by direct proceedings brought by the state [or in Kansas by those authorized by 15-126, *supra*]. In case of corporations where there is not even a de facto municipal corporation, the attempted creation is void and not only subject to direct attack either by the state or private persons, subject to certain exceptions, but also subject to collateral attack in any proceedings."

At this point we again point out this is a direct review of the legality of the proceedings to incorporate by one authorized by the legislature in 15-126, *supra,* to initiate the proceeding. Courts are generally reluctant to declare the creation of a municipal corporation invalid in collateral proceedings. This is so because in the case of a de facto corporation its existence and acts are valid against all the world except in direct proceedings authorized to question its creation or to arrest its usurpation of power. (1 McQuillin, Municipal Corporations, 3rd Edition, § 3.48c, p. 323.) This judicial reluctance is not justified in the present direct review proceeding.

Where as here the question before the court on direct review is whether there has been substantial compliance with a statute authorizing creation of a city, substantial compliance requires compliance in respect to the essential matters necessary to assure every reasonable objective of the statute. (See *Stasher v. Harger-Haldeman,* 58 Cal. 2d 23, 22 Cal. Rptr. 657, 372 P. 2d 649; and cases cited

in 40 Words and Phrases, Substantial Compliance with Statute, pp. 771, 772.) In the present case the notice requirements of K. S. A. 15-119 were not substantially met. Under the facts we find neither substantial compliance nor the elements necessary to show waiver or estoppel. Such failure to show substantial compliance, waiver or estoppel renders the order of the board of county commissioners invalid.

The appellant raises additional questions including the effect of a wholly erroneous description of property inserted in the order of incorporation. It becomes unnecessary for this court to answer such questions. We have previously determined herein that the failure to follow the statutory procedure renders the order of incorporation unlawful. Accordingly the order of the Board of County Commissioners of Wyandotte County, Kansas, creating Piper City is set aside and the judgment of the district court is reversed.