James F. Rueger Major General Kansas Army National Guard Adjutant General 2800 S.W. Topeka Blvd. Topeka, Kansas 66611-1287
Dear Adjutant General Rueger:
You request our opinion concerning the relative responsibilities, duties, and liabilities of various entities and parties connected with emergency planning laws. The general focus of your questions is upon the overlap or conflict between state and federal laws, and the requirements that may be placed on a board of county commissioners.
Counties are vested with much authority regarding emergency preparedness matters. K.S.A. 1994 Supp. 19-101a gives counties statutory home rule power. Generally stated, this authority allows counties to transact all county business as deemed appropriate, unless subject to a specific limitation, restriction or prohibition. K.S.A. 19-212 authorizes the board of county commissioners to exercise county governing power. This includes the authority to contract for the protection and promotion of the public health and welfare. Other statutes permit boards of county commissioners to provide specific emergency services to the inhabitants of the county. E.g., K.S.A. 65-6113 et seq. (emergency medical service); K.S.A. 65-6114 (emergency communications); K.S.A. 19-3601 (fire districts); K.S.A. 12-5301et seq. (emergency telephone system); and K.S.A. 1994 Supp.12-16,117 (emergency mutual or reciprocal agreements).
While these authorities permit boards of county commissioners to provide certain emergency services to county residents, authority to provide a service does not necessarily dictate that it must be provided or that it must be provided in a certain manner. When the term "may" is used in a statute it usually indicates that the decision is committed to the discretion of the party authorized to take that action. Matzke v. Block, 542 F. Supp. 1107 (D.C. Kan. 1982). Absent a specific duty to perform a governmental function in a certain way, decisions concerning how best to provide governmental services are ordinarily discretionary in nature.
You ask several questions concerning K.S.A. 48-929 and potential county liability for failure to properly establish and maintain a disaster agency under this act. This statute states in pertinent part:
 "(a) Each county within this state shall establish and maintain a disaster agency responsible for emergency management and coordination of response to disasters or shall participate in an interjurisdictional arrangement for such purposes under an interjurisdictional disaster agency as provided in K.S.A. 48-930, and amendments thereto. Except as otherwise provided in this act, each county or interjurisdictional disaster agency shall have jurisdiction over and shall serve all of each county included thereunder. No county which is included in an interjurisdictional arrangement under the jurisdiction of an interjurisdictional disaster agency pursuant to subsection (a) of K.S.A. 48-930, and amendments thereto, shall establish or maintain a separate disaster agency for such county." (Emphasis added).
Thus, K.S.A. 48-929 requires that each county establish and maintain a disaster agency. K.S.A. 48-926 through 48-939 set forth the authority of local and state officials. K.S.A. 48-931
provides that "[t]he division of emergency management shall take an integral part in the development and revision of local and interjurisdictional disaster emergency plans prepared under K.S.A.48-929 and 48-930, and amendments thereto." Under K.S.A.48-904(c) the division of emergency management is part of the office of adjutant general. K.S.A. 48-928 sets forth the various duties and authorities of the division.
K.S.A. 48-929(d) requires each county, city, and interjurisdictional disaster agency to conform with the standards for disaster emergency plans promulgated by the division of emergency management in their preparation and maintenance of a current disaster emergency plan for the area. This subsection also speaks to the periodic review and approval of such plans by the division of emergency management. Thus, the state legislature appears to have contemplated some cooperative, ongoing interaction between the state and local officials. However, the exact parameters of that cooperation are not dictated by statute, nor does the statute establish penalties for failure to effectively cooperate.
K.S.A. 48-929 states that the county shall establish a disaster agency and shall conform to certain standards. K.S.A. 48-929
appears to require certain behavior of a county. However, the adequacy of performance of these requirements can only be determined on a case by case basis. If a county has established a disaster agency and minimally conformed to standards otherwise legally established, it can be said that it has met these statutory mandates. [We note that use of the word "shall" does not necessarily establish a mandatory duty.] Griffin v.Rogers, 232 Kan. 168 (1982); City of Kansas City v. Board ofCounty Comm'rs of Wyandotte County, 213 Kan. 777 (1974).
You question the sufficiency of some plans or the staffing of some county emergency units. Absent a statutory or regulatory law which requires that a specific position be staffed in a specific manner, the employing entity ordinarily has discretion to determine what level of staffing is adequate to perform a given public function. K.S.A. 48-926 et seq. do not dictate the details of county plans, nor do those statutes require that a county hire or fund an emergency preparedness coordinator position. Rather, the act requires that the county have a plan, and that the division provide guidance. Under the act in question, minimal compliance by the local unit of government will technically meet the statutory requirements.
You inquire about potential county liability for activities connected with K.S.A. 48-929. With regard to a county or a board of county commissioners, we find no provision of K.S.A. 48-904 etseq. that makes them automatically liable for the failure to adequately establish, staff or maintain a disaster agency or plan. On the contrary, K.S.A. 48-915, 48-933, 48-934 and 48-935 all provide some immunity for many persons and entities involved in the activities and services authorized or performed under this act. Moreover, the Kansas tort claims act (KCTA), set forth at 75-6101 et seq., provides the county and the county commissioners with a great deal of personal and governmental immunity for injuries that may result in connection with the performance of governmental functions.
It is possible that a county required to provide or rendering services to the public may be subject to liability if third persons suffer harm resulting from a failure to exercise reasonable care in the performance of an undertaking. However, such liability questions cannot be answered in the abstract. Negligence tests include examination of the duty owed to third persons, the breach of that duty and the proximate cause of any harm suffered by a third party. Johnson v. The Board of CountyComm'rs of Pratt County et al., No. 71,419 (Kan.App., June 2, 1995). While counties and county commissioners can be sued and money judgments obtained for injuries resulting from the negligent performance of public duties, such liability is impossible to establish without knowledge of specific facts as well as specific legal claims. Ultimately, liability for any claim can only be determined through the mechanism of a lawsuit in which procedural, evidentiary, factual and substantive legal issues are litigated.
Two other possible ramifications, mandamus or breach of contract, may flow from a county's failure to adequately comply with K.S.A.48-929. Mandamus is the primary remedy available to compel a public body to perform a duty. See K.S.A. K.S.A. 60-801 et seq. However, mandamus is an extraordinary action that is only available to compel performance of a mandatory governmental duty, and will not suffice to compel performance of a discretionary power nor allow a court to substitute its judgement concerning discretionary decisions. Huser v. Duck Creek Watershed District,234 Kan. 1, 4, 5 (1983). If some minimum attempt to comply with the act has been made, it is unlikely that a court would find mandamus appropriate. Alternatively, if the county has entered into an agreement with another entity to perform duties or activities in a specified manner, but has wholly or substantially failed to so perform, the other party to the agreement may consider seeking remedies for breach.
We believe that the less a county does to insure compliance with this act, or the less reasonably adequate the performance of the required public service, the more likely it is that a litigant would prevail on a claim that the county failed to fulfill a statutory duty and caused a resulting compensable injury. However, in general, partial failure to comply with K.S.A. 48-904et seq. or alleged inadequate planning under these provisions will not automatically make the county, or its board of commissioners, liable to all persons who may later allege that they suffered adverse consequences arising from the county's failure to establish or adequately maintain a disaster agency or plan.
Your third set of questions concerns the federal and state laws discussing comprehensive emergency response plans for accidental release of hazardous substances. You again question which entity is responsible and what liabilities or ramifications exist if an obligation is not met.
The federal emergency planning and community right-to-know act of 1986, set forth at 42 U.S.C. § 11001 et seq., requires that state governments do certain things to plan ahead for and respond to disasters involving release of hazardous substances. 42 U.S.C. § 11001(a) requires the establishment of a state emergency response commission (SERC). Kansas has done this under K.S.A. 65-5701 etseq. K.S.A. 65-5704 and 65-5705 assign specific responsibilities and authority to the secretary of the Kansas department of health and environment (KDHE) and adjutant general in furtherance of the purposes of the SERC.
42 U.S.C. § 11001(b) and (c) require the establishment of emergency planning districts and committees. You inform us that, pursuant to K.S.A. 65-5703(f) and 42 U.S.C. § 11001(b), each county was designated as the planning district. In Kansas, each county has its own designated local emergency planning district (LEPC). However, each county disaster agency under K.S.A. 48-929
may be the LEPC or some other entity. As recognized in Attorney General Opinion No. 89-56, while a county or counties may initially create the LEPC, that entity remains a separate and distinct entity.
Pursuant to K.S.A. 49-926 et seq., the adjutant general has promulgated regulations setting forth the standards for local disaster agencies. K.A.R. 56-2-1 et seq. became effective in 1993. These regulations establish the correct standards and procedures to be followed by local disaster agencies. K.A.R.56-2-1 et seq. recognize that the duty of implementing the emergency plan resides in the entity that has been established for this purpose.
42 U.S.C. § 11003 discusses the comprehensive emergency response plans and requires that each LEPC take certain action to prepare such a plan. This includes (1) completing and reviewing the plan, (2) evaluating the need for resources and making recommendations with respect to additional resources, (3) including certain types of things in the plan, (4) providing information to affected facilities, and having the plan reviewed by the SERC.42 U.S.C. § 11003. Thus, the LEPC must do these things in those counties where the LEPC is the local disaster agency contemplated by42 U.S.C. § 11001 et seq.
You ask whether a county board of commissioners is exempt from responsibility for disaster emergency planning related to accidental release of hazardous substances based upon a reading of K.S.A. 48-929 and 42 U.S.C. § 11003. A county (or city) must comply with the applicable provisions of K.S.A. 48-929. That includes doing what is required of such entities under subsections (a), (d), and (e). If the county is not the LEPC established under and subject to federal law, then it and its officials are not primarily responsible for the performance of duties dictated therein.
Nevertheless, these enactments are intended to complement each other and provide for a coordinated effort between public entities. LEPC's are in part dependent upon the county for funding and other assistance. Many times, LEPC members are also county employees. Thus, the failure of a county or LEPC to correctly comply with applicable requirements will almost surely have an impact upon the performance of duties imposed upon the other. This type of local power sharing problem can ultimately be resolved by the cooperative efforts of those concerned.
Your final questions concern the differences between state and federal law and the inconsistency in public fund accountability requirements. You ask if a specific contract is binding, and if so, upon whom; what advantage accrues to the contracting entities; what rights and obligations are created by the contract; what constitutes satisfactory performance; what penalties flow from a breach; and who can be party to such a contract.
You inform us that the federal emergency management agency (FEMA) makes funds available to "assist in the development of a comprehensive, risk-based, all hazards emergency management system at the . . . State, and Local levels. . . ." This money is part of a federal program and is passed on to states. A state in turn passes it along to local entities. Agreements are negotiated yearly. You note that 44 C.F.R. § 302 and 303 provide for this funding and include a copy of a typical "Kansas Local Comprehensive Agreement Program Submission."
You question whether this agreement constitutes a binding contract between the Kansas division of emergency management (KDEM) and a board of county commissioners. The agreement in question, coupled with the grant of money, appears to be binding on the parties. In general, if the signatories have the power to bind the public body they represent in this matter, and the performances agreed to can be legally performed by the parties so agreeing, the agreement is ordinarily binding. In order to contract, a public entity must first have the authority to contract and secondarily have the authority to do the things it is agreeing to do by contract. See,e.g., Dillon Stores v. Lovelady, 253 Kan. 274 (1993). Counties and boards of county commissioners have much contractual and emergency planning authority. See K.S.A. 1994 Supp. 19-101a and19-212. Likewise, LEPC's have the authority granted by their creating authority and by statutes applicable to such entities. As a county, the state and the LEPC are all separate and distinct entities, one cannot unilaterally bind another to a contract. Moreover, a contract ordinarily binds the public body, not the individuals representing that body. Wolf v. Fidelity and DepositCo. of Maryland, 174 Kan. 402, 406 (1953).
You next ask what advantage there is to having the KDEM planning representative sign this agreement. If the funding is not automatically available to local authorities, an agreement by the party having the authority to grant or withhold public funds gives that grantor/party some recourse should the grantee not fulfill certain obligations. Moreover, the signature of the grantor (or their designee) evidences the grantee's right to receive the funds. Thus, it is necessary that an official representing the granting authority be a party to the agreement.
You ask about the preservation of rights and obligations by the KDEM. We do not find anything in the provided agreement that speaks to what that state entity will do to obtain the agreement or can do if the agreement is breached by local officials. Thus, any "rights" KDEM has may accrue pursuant to some other authority, such as federal law applicable to the funds in question. However, in general a grantor ordinarily has the right to enforce the performance of the terms of the grant, or to seek recovery of the granted funds if the terms of the grant are not reasonably fulfilled by the grantee.
You ask what is satisfactory performance under this agreement. We cannot address this issue as it requires the application of a subjective state of mind to facts not available to us. However, most legal measures of satisfaction use a reasonableness standard. Restatement of Contracts 2d § 228. The test of satisfaction is usually the personal judgment of the party to whom the promise was made. 17A Am. Jur. 2d Contracts § 650. This judgment must be made in good faith. Id. If the party to whom the promise was made is not satisfied, a court would examine whether a reasonable person would be satisfied considering the "intention of the parties in the individual case as determined by a proper construction of the contract in which all of the circumstances are considered." Id.
You ask what constitutes sufficient evidence of satisfactory performance. This is also an issue that can not be hypothetically addressed. It is a general rule that partial performance does not entitle the performing party to performance of the contract by the other or a recovery against the other. 17A Am. Jur. 2dContracts § 636. "Full or substantial performance of the promise of one party is ordinarily a condition precedent to the right to maintain an action on the promise of the other unless the promise of the latter is independent of any performance by the former."Id. However, if a party is deemed to have "substantially" complied with the terms of the contract, a claim of breach will usually be defeated." 17A Am. Jur. 2d Contracts § 631.
You ask us to address the provisions of 44 C.F.R. § 302 and what ramifications may follow if a county receives federal funds but does not work with the LEPC or if the LEPC may directly apply to the state for federal funding and how the federal emergency management agency (FEMA) can impose requirements not associated with civil defense without violating the regulations set forth at44 C.F.R. § 302.1(a) and (b). We cannot address this last issue without reference to the exact requirements in question and all
authority under which FEMA is acting or granting specific funding. However, in general, an administrative agency may do those things it is authorized to do or implied from such authorization. If the money in question is only available to FEMA for civil defense uses by the states, but it is being improperly granted or improperly used for other purposes, we believe it is appropriate to contact a federal auditor or raise this concern with the FEMA.
Currently, the funding mechanisms for federal emergency planning money flows from the federal government, to the state, to the local body (in most cases counties), then finally to the LEPC. At each stage, we presume that the grantor expressly or impliedly imposes some requirements upon the grantee. In addition to applicable statutory or regulatory requirements, the various agreements and grant terms must all be considered in order to fully address what is required and of whom. However, in general, if the grantor of public moneys places restrictions on how the money may be used or what must be done in order to receive or continue receipt of such moneys, the entity receiving the funds is required to fulfill agreed to obligations. Complete lack of or substantially inadequate performance by the grantee may be grounds to file an action for breach or otherwise make a demand for repayment of some or all of the granted funds, or may adversely impact upon future relationships between the parties.
In order to address whether the state may pass the funds directly to an LEPC, by-passing the county officials, we must examine the federal laws and the contractual capacity of the LEPC. The cited federal regulation addresses "political subdivisions" of the state. The issue is whether the LEPC qualifies as a political subdivision. Cities and counties in Kansas are considered political subdivisions of the state. Tomasic v. Kansas City,Kansas Port Authority, 230 Kan. 404, 414 (1981). The common characteristic that permits this classification is the conferral of the power of local legislation and administration by the state on these two entities. See Koppel v. City of Fairway,189 Kan. 710, 712 (1962); Kowing v. Douglas County Kaw Drainage District,167 Kan. 387, 391 (1949). The legislature has not conferred the power to enact, amend or administer ordinances on LEPC's. We do not believe they are political subdivisions of the state. Therefore, the federal funds in question may not pass directly to LEPC's. However, as this reading necessarily interprets federal law, you may want to contact the appropriate federal authorities who are authorized to grant the funds in question.
In conclusion, the responsibilities, duties, powers and liabilities of the state, county and local emergency preparedness committees must largely be determined by first reviewing any authorizing statutes to ascertain what functions are permissive or required of each entity, and then examining the reasonableness or sufficiency of specific actions or failures resulting from the exercise of those authorities. A local emergency preparedness committee does not qualify as a political subdivision of the state for purposes of directly receiving the specific federal grants for emergency preparedness purposes.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:bas