Ed Van Petten, Executive Director Kansas Lottery
128 North Kansas Avenue Topeka, Kansas 66603
Dear Mr. Van Petten:
You inquire whether the Kansas Expanded Lottery Act (KELA)[1]
requires a lottery gaming facility manager (facility manager) to purchase or lease lottery facility games or whether a facility manager can provide the funds to the Kansas Lottery (Lottery) that would then lease or purchase the games. If the Lottery can lease or purchase the games, the next question is whether the lease/purchase of the games is exempt from payment of the retailers' sales tax.[2]
K.S.A. 2008 Supp. 74-8734(n)(2) provides, as follows:
 A lottery gaming facility manager, on behalf of the state, shall purchase or lease for the Kansas lottery all lottery facility games. *Page 2 
All lottery facility games shall be subject to the ultimate control of the Kansas lottery in accordance with this act.[3]
The issue is whether "shall" is mandatory or directory. If "shall" is mandatory, then it is the facility manager that must purchase/lease the games — not the Kansas Lottery. A recent Kansas Supreme Court case provides the analysis for determining whether the word "shall" in a statute is mandatory or directory.
In State v. Raschke, [4] the Court considered whether "shall" is mandatory in a statute setting forth minimum fines for forgery.[5] In determining that "shall" is mandatory, the Court, after reviewing relevant Kansas appellate court decisions since 1863, enunciated the following principles:
 1. The canon of statutory construction commanding courts to apply the plain language of a statute does not apply when determining whether "shall" is mandatory or directory because the meaning is not plain.[6]
 2. Legislative context and history can be crucial in making the determination whether "shall" is mandatory or directory.[7] Although there is no absolute test, the context of a statutory scheme and case law is ultimately determinative.[8]
 3. Mandatory provisions deal with substantive matters as opposed to mere form.[9] "Shall" provisions affecting a person's rights are more likely to be seen as mandatory.[10]
 It is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done and is intended to secure order, system and dispatch of the public business, the provision is directory.[11]
 4. Another distinction between mandatory and directory provisions lies in the consequence of noncompliance. An act done in disobedience of a mandatory *Page 3 
provision is void. Although a directory provision should be obeyed, an act done in disobedience of may still be valid.[12]
 It can safely be said that the legislature does not intend any statutory provision to be totally disregarded. So, when the consequences of not obeying a particular statute are not prescribed by the legislature . . . the court must decide the consequences. In determining the consequences of failure to comply with a statute, courts necessarily consider the importance of the literal and punctilious observance of the provision in question with regard to the ultimate object which the legislature sought to serve.[13]
Applying these standards to the statute at issue here, "shall" is mandatory and, therefore, it is the manager's duty to purchase/lease the games — not the Kansas Lottery with funds provided by the facility manager.
In reviewing the legislative history of KELA, it is apparent the Legislature intended that certain provisions of the contract between the facility managers and the Lottery are discretionary while other provisions are mandatory. As an example, K.S.A. 2008 Supp. 74-8734(h) provides that "any management contract approved by the [Lottery] commission . . .shall" (1) have a minimum term of 15 years; (2) specify the total amount to be paid to the facility manager; and (3) require facility managers to pay regulatory and oversight costs.[14]
Discretionary provisions are found in section (l) of that same statute: "Management contracts . . . may include provisions relating to: (1) accounting provisions to determine lottery gaming facility revenues; (2) minimum requirements for a facility manager to provide oversight; (3) eligibility requirements for employees; and (4) termination provisions."[15]
In Curless v. Board of County Comm'rs, [16] the Court interpreted "shall" in the phrase: "a city shall issue a license" as mandatory because the legislature had stricken more permissive language from a previous version of the enactment. In a previous version of KELA, the provision in question here made it discretionary on the part of a facility manager to purchase/lease games.[17] Applying the Curless rationale, the change from "may" in a previous version of KELA (2007 H.B. 2055) to "shall" in the version that was ultimately adopted (2007 S.B. 66) signals an intent that the requirement is mandatory. *Page 4 
The rule that mandatory provisions deal with substantive matters rather than form and that strict compliance is essential to the parties' rights militates for an interpretation that the provision is mandatory. KELA dictates the provisions of the management contract between the State and the facility manager. Failure of a facility manager to agree to lease/purchase the games should result in the Lottery's rejection of an application.
In fact, the application procedure for all facility manager contracts provides that the Lottery's "ownership and operational control include . . . the following rights and authorities: Torequire the manager to lease or purchase gaming machines on behalf of the Lottery."[18] The contracts provide that "the Manager must purchase or lease, on behalf of the State . . . all lottery facility games . . ."[19] Failure to comply with this provision could place the facility manager in breach of the contract.[20] Thus, the requirement that a facility manager lease or purchase facility games is a substantive matter in which strict compliance is essential to the parties.
As KELA requires a facility manager to purchase or lease lottery games, it is not necessary to respond to your question regarding a sales tax exemption because a prerequisite to exemption is a "direct" purchase by the State itself.[21]
Sincerely,
Steve Six Attorney General
Mary Feighny Deputy Attorney General
SS:MF:jm
[1] K.S.A. 2008 Supp. 74-8733 et seq.
[2] K.S.A. 2008 Supp. 79-3606(b).
[3] Emphasis added.
[4] Kansas Supreme Court, No. 98,861 (October 30, 2009).
[5] K.S.A. 21-3710("For a first conviction, a personshall be fined the lesser of the amount of the forged instrument or $500. . . .") (Emphasis added.)
[6] State v. Raschke, at 5.
[7] Id.
[8] Id. at 10.
[9] Id. at 6-7.
[10] Id. at 10.
[11] City of Hutchinson v. Ryan, 154 Kan. 751 (1942), cited in State v. Raschke, at 7.
[12] Hooper v. McNaughton, 113 Kan. 405 (1923); Wilcox v.Billings, 200 Kan. 654 (1968), cited in State v.Raschke at 7-8.
[13] City of Kansas City v. Board of County Comm'rs,213 Kan. 777 (1974), cited in State v. Raschke at 11.
[14] Emphasis added. Other mandatory provisions are identified in K.S.A. 2008 Supp. 74-8734(h).
[15] Emphasis added. Other optional provisions are identified in K.S.A. 2008 Supp. 74-8734(l).
[16] 197 Kan. 580 (1966).
[17] 2007 House Bill 2055, § 3(l) ("A lottery gaming facility manager, on behalf of the state, may purchase or lease for the Kansas lottery all lottery facility games.")
[18] Emphasis added. Application Review Procedures for Lottery Gaming Facility Manager Contracts, 26 Kansas Register, No. 20 at 805.
[19] Emphasis added.http://www.kslottery.com/ExpandedLotteryAct/ExpandedLotteryActInfo.htm at § 21. Emphasis added.
[20] http://www.kslottery.com/ExpandedLotteryAct/ContractsSWZone/DodgeCityResortContract.pdf at 25.
[21] K.S.A. 2008 Supp. 79-3606(b); K.A.R. 92-19-52(b)("To qualify as a direct purchase . . . any bill, invoice . . . shall be made out in the name of the entity which qualifies for the exemption.")