No. 44,966

MILDRED HAND, GORDON KIRBY, LEE H. MCCASLIN, LYLE PARSONS and RICHARD D. WHITE, on Behalf of Themselves and all Other Resident Electors in the Attendance Center of Disorganized McCune, JOINT RURAL HIGH SCHOOL No. II, *Appellants*, v. BOARD of EDUCATION of UNIFIED SCHOOL DISTRICT No. 247, Crawford County, State of Kansas, PHILLIP HOOKE, President; PAUL HUFF, Vice-President; DEAN RASTAU, Member; CLAYTON ADAIR, Member; EARL MCCOLM, Member; and DARRELL HITE, Member, *Appellees*.

(426 P. 2d 124)

Opinion filed April 8, 1967.

*Vernon D. Grassie*, of Girard, argued the cause and was on the brief for appellants.

*Perry Owsley*, of Pittsburg, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from an order of a district court denying injunctive relief against the Board of Education of Unified School District No. 247, Crawford county, Kansas. Patrons of McCune Joint Rural High School No. 2, a disorganized high school district, brought the action to prevent the unified district board from closing the high school at McCune without an election or consent as provided by K. S. A. 72-6756.

Because of the urgency of the matters involved the hearing of the appeal was advanced at the request of all parties and an interim opinion was issued on March 8, 1967, reversing the order of the district court with instructions to grant the injunctive relief to the extent necessary to prevent closing of the high school at McCune. The interim opinion appears in *Hand v. Board of Education,* 198 Kan. 459, 426 P. 2d 124. We set forth here the rationale of the interim opinion.

The matter was decided below on a stipulation of facts. Unified School District No. 247 was organized under the Unified School District Act of 1963 (K. S. A. 72-6734, *et seq.*). The district was validated by subsequent act of the legislature. (K. S. A. 1965 Supp. 72-6764.) School districts at Cherokee, Weir City, Mineral, Chicopee and McCune were unified under one district organization. The plaintiffs are resident electors of the disorganized McCune Joint Rural High School No. 2, and are appellants herein. The defendants are the members who make up the Board of Education of Unified School District No. 247, Crawford county, Kansas. They are appellees herein.

During the 1966-1967 school year the unified board operated two high schools, one at Cherokee and one at McCune. The high school at Cherokee had an enrollment of 263 students with an instruction cost of $229.28 per pupil. The Cherokee high school offered 62½ units of instruction and had a teacher-pupil ratio of one teacher for fourteen and a half students. The building at Cherokee was constructed in 1961 and has all new equipment.

The McCune high school had an enrollment of 98 students with an instruction cost of $550.00 per pupil. The McCune high school offered less than 27½ units of instruction and had a teacher-pupil ratio of one teacher for nine students. The school buildings located at McCune had been used in common by the high school and a grade school. The classroom building was constructed in 1925 and other buildings were constructed by the two schools in 1957.

Prior to unification the grade school at McCune was operated by Grade School District No. 57 and the high school was operated by McCune Joint Rural High School No. 2. Each school had different territorial boundaries, separate budgets and separate school boards. The two schools have been operated at McCune for many years. These districts became disorganized and their functions were taken over by Unified School District No. 247. The unified board con-

tinued to operate the grade school and the high school at McCune during the first year after unification. Because of the pupil-teacher ratio at the McCune and Cherokee schools in 1966-67, the unified board did not receive state aid under the state finance law. This amounted to an estimated $39,000.00. If all high school students at McCune are transferred to the high school at Cherokee the district will receive an additional $39,000.00 in state aid.

The unified board passed a resolution requiring all high school students in the entire unified district to attend high school at Cherokee during the 1967-68 school year. If carried into effect this would terminate high school classes at McCune. The school buildings would be used for grade school classes and activities.

The appellants sought injunctive relief against the unified board to prevent closing the high school at McCune. They base their action upon a specific provision of the Unified School District Act of 1963, K. S. A. 72-6756 which reads:

"The board shall not close any attendance facility that was being operated at the time the unified district was organized if at least three-fourths (¾) of the territory of the district which formerly owned such building is included in such unified district unless and until a majority of the resident electors within the attendance center of such attendance facility shall give their consent thereto. Such consent may be given in writing in the form of a petition, or the board may submit the question to a vote of such resident electors in the attendance center at a meeting called for that purpose, ten (10) days' notice of which shall be given by publication in a newspaper having general circulation in such attendance center. If a majority of those voting on the question vote in favor thereof, the same shall constitute consent for the purpose of this section. For the purpose of this section the following terms shall have the following meanings: The term 'attendance facility' means a school building which has been property of a school district disorganized pursuant to this act, but which, at the time under consideration, is owned by the unified district. The term 'attendance center' means the area around an attendance facility consisting of the territory in such unified district of the disorganized district which formerly owned such attendance facility."

Appellants contend the legislature gave them a right of self determination. Before their high school at McCune could be closed the unified board was required to obtain written consent of a majority of the resident electors within the territory of the disorganized McCune Joint Rural High School District No. 2. Or, the school might be closed after an election held in accordance with the statute. Appellants argue that without such consent or election the unified board must continue to operate the high school at McCune.

The unified board's argument may be summarized as follows. The board has not closed any attendance facility. The grade school will be operated and it will make use of all the school buildings. The board is moving the students in the 9th, 10th, 11th and 12th grades to Cherokee where school facilities are better for these students. The legislature defined "attendance facility" in the act to mean a school building. The board will not close any building. The board is adjusting the classes so it can make a wiser use of public funds and give these students a wider range of high school instruction in compliance with the legislative declaration of purpose.

The legislative declaration is set forth in the act as K. S. A. 72-6734 and reads:

"The legislature hereby declares that this act is passed for the general improvement of the public schools in the state of Kansas; the equalization of the benefits and burdens of education throughout the various communities in the state; to expedite the organization of public school districts of the state so as to establish a thorough and uniform system of free public schools throughout the state whereby all areas of the state are included in school districts which maintain grades one (1) through twelve (12), and kindergarten where desired; and to have a wiser use of public funds expended for the support of the public school system of the state. To these ends this act shall be liberally construed."

Appellee relies upon a primary rule for the construction of a statute as set forth in *Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474, Syl. ¶ 1, which reads as follows:

"A primary rule for the construction of a statute is to find the legislative intent from its language, and where the language used is plain and unambiguous and also appropriate to the obvious purpose the court should follow the intent as expressed by the words used and is not warranted in looking beyond them in search of some other legislative purpose or of extending the meaning beyond the plain terms of the act."

We have no quarrel with the law expressed therein. The unified board is prohibited from certain actions without first obtaining approval of a majority of the resident electors within the territory of the disorganized McCune district. The board shall *not close any "attendance facility" that was being operated* at the time the unified district was organized without consent of the electors. "Attendance facility" is defined as a school building which has been property of a school district disorganized. The meaning of the term seems clouded rather than cleared by the definition supplied in the act.

A unified board is given broad powers under the act to make rules and regulations for conduct of the various schools in their dis-

trict. They may divide the district into subdistricts for purposes of attendance. They have the title to, and care and keeping of all school buildings. They may open any or all of the buildings for community purposes and adopt rules for use of the same. School buildings not needed by the district may be sold by the board with certain restrictions. (See K. S. A. 72-6755.)

It appears inconsistent to say that the right to make use of any particular school building and to close such building was purposely restricted by the legislature, if closing an entire school is not also restricted. Certainly the resident electors of a disorganized district are more interested in and affected by closing their school than they are by discontinuing use of one building which may no longer be required to operate a high school.

To understand the intent of the legislature in requiring the unified board to obtain approval of the resident electors of the disorganized district we must keep in mind the history and traditions surrounding the early schools in Kansas. The establishment, control and management of schools in the early years of statehood were placed in the hands of the parents and local taxpayers by the legislature. It was under such circumstances that the small country schoolhouse became the center of community life under the close supervision and control of parents, neighbors and friends. This tradition of local community administration became an accepted and deeply rooted right of self determination to be jealously guarded. Parental control and participation in the educational process was wisely delegated by the legislature to meet the needs of a scattered rural population under the circumstances then existing.

As our population grew rural conditions changed. Better roads were built to make use of faster means of transportation. There was a shifting of population and wealth. Rapid technological change occurred and with it came a need for education in ever widening areas. It became apparent that we must make changes to keep abreast of the times. Some school districts increased rapidly in taxable wealth while others remained relatively static. It appeared desirable therefore to make changes in our educational system to secure equal educational opportunities for the children in different districts. Changes seemed necessary to equalize the tax burdens brought on by population shifts.

The legislature became aware of this need for change in public education and the Unified School District Act of 1963 was passed

with the legislative intent expressed in K. S. A. 72-6734. This new school law provided for local planning boards and public hearings to explain the new concept in establishment, control and management of schools. The law has created a large amount of confusion and dissatisfaction throughout the state, particularly in small and isolated communities where its operation was deemed contrary to local interests.

It must be assumed that the traditional element of local control of the schools was within the thinking of the legislature at the time the new act was passed. We believe this historical background sheds light on what the legislature intended by the provisions of K. S. A. 72-6756 requiring consent or affirmative vote by a majority of the resident electors of a disorganized district. So, the legislature provided that the unified board shall not close certain attendance facilities without consent or a favorable vote of the resident electors within the disorganized district. This particular section of the unification law appears to have been inserted by the legislature to permit a vestige of self determination, which might smooth the troubled waters resulting from disorganization of small school districts and the attendant threat of closing their schools.

The words "attendance facility" are not used elsewhere in the act. The definition supplied by the act (*i. e.* school building) is of some help in arriving at the correct meaning intended by the legislature. The restriction on closing is applied in case of an attendance facility *that was being operated* at the time the unified district was organized. A school is operated when a school building is available for students to attend school. Idiomatically speaking a school is referred to as being operated and a school building as being used. The term attendance facility combines two elements in its general meaning. The first refers to a place of attendance and the second a place more convenient to attend. When we consider in context a school building, a place of attendance and a place more convenient to attend it compels us to define "attendance facility" as any high school, junior high school, or elementary grade school being operated at the time the unified district was organized.

Under such definition a school building may be an attendance facility. Since McCune Joint Rural High School No. 2 did operate a high school at McCune when the unified district was organized the McCune high school may not be closed without complying with the provisions of the act relating to written consent or election by resident electors.

The unified board bases its argument upon the definition supplied in the statute. An attendance facility is a building. They argue the buildings at McCune are not closed if the board operates a grade school in these buildings. The difficulty in accepting such argument is apparent. If the unified board is permitted to transport the 9th, 10th, 11th and 12th grades to Cherokee without consent or vote of the McCune resident electors, they would also have a right to discontinue the 7th and 8th grades by transporting the students elsewhere. The next step might be to transport all students elsewhere and use the buildings for other school purposes. If this were permitted it would render the restriction against closing ineffective.

Therefore the court has concluded the judgment denying injunctive relief was in error. Injunctive relief should be granted to prevent action by the unified board which would result in discontinuing the high school at McCune unless and until the board obtains written consent or an affirmative vote of a majority of the resident electors within the territory formerly comprising McCune Joint Rural High School District No. 2.

Judgment is reversed as provided in the interim opinion filed March 8, 1967.