No. 47,469

E. J. Meinhardt, Lora Jean Seele, Judith K. Robinson, Melvin H. Burris, Jr., Paul Heigert, Willis Wilson, Wm. D. Walman, Carole Pickert, *Appellants*, v. The Board of Education of Unified School District No. 329 and Ralph TenEyck, John Frank, S. W. Mays, Walter Geisler, Peggy Flagler, Arthur A. Adams, Jr., each individually and as members of the Board of Education of Unified School District No. 329, and Cecil L. Smith, individually and as Superintendent of Unified School District No. 329, *Appellees.*

(531 P. 2d 438)

Opinion filed January 25, 1975.

*James P. Buchele*, of Topeka, argued the cause and was on the brief for the appellants.

*Bill Baldock*, of Alma, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Foth, C.: Plaintiffs brought this injunction action challenging the right of the defendant board of education of Unified School District No. 329 to change the use of the high school and grade school buildings in Paxico, Kansas. The trial court upheld the change of use and granted summary judgment for the board. Plaintiffs have appealed.

Plaintiffs are residents of the unified district, and also of the disorganized rural high school and common school districts which owned the buildings prior to unification. It was stipulated that

enough of the territory and valuation of each of the disorganized districts is contained in the unified district so that under K. S. A. 72-8213 (*a*) neither building can be "closed" without the consent of the electors of the old districts.

What the board proposed was not to close either building, but to change the use of each for the 1974-75 school year. The board justified its proposal under K. S. A. 72-8213 (*e*):

"Nothing in this section, shall be deemed to restrict or limit the authority of any board to change the use of any attendance facility, so long as at least three (3) high-school grades, three (3) junior high-school grades, or six (6) elementary school grades are offered in such attendance facility."

Prior to this 1974-75 school year the district maintained a four year high school, grades 9-12, in the Paxico high school building. The elementary school building housed kindergarten and grades six through eight. (Plaintiffs advise us that this use was approved by petition of the electors. Children in grades one through five attended the nearby Newberry elementary school.)

The board's proposal as finally and formally set out in its resolution of March 7, 1974, called for transporting senior high students (grades 9-12) to Alma, and using the Paxico high school building for a junior high school to comprise grades six through eight. In the elementary school, the sixth through eighth grades would be replaced by first through fifth graders, so it would then have kindergarten and grades one through five (K-5).

Whether the proposed changes comport with the quoted statute (K. S. A. 72-8213 [*e*]) depends, as to the high school building, on whether grades six through eight are three "junior high-school" grades. As to the elementary school, the question is whether K-5 comprises "six (6) elementary school grades." When the case was submitted to the court below the parties further distilled the issues as follows:

"1) May the 6th grade be considered a 'junior high school grade' within the meaning of K. S. A. 72-8213 (*e*)?

"2) May kindergarten be considered an 'elementary school grade' within the meaning of K. S. A. 72-8213 (*e*)?"

Two hearings were held on plaintiff's application for a temporary injunction. At the first plaintiffs introduced the testimony of an experienced educator. He testified that in traditional thinking a junior high school consisted of grades seven through nine, not six through eight. The traditional "configuration" of a school system having a junior high was "6-3-3," meaning six elementary grades,

three junior high grades, and three senior high grades. Kindergarten was traditionally considered a special preschool class or program, not a grade. He also testified that to his knowledge six Kansas school districts presently operate under the "5-3-4" plan proposed by the defendant district. All Kansas districts offer kindergarten.

At the conclusion of the second hearing the trial court granted defendants' motion for summary judgment, and subsequently filed a memorandum decision in which, after setting out the history of the proceedings and the issues, those issues were resolved as follows:

"On the junior high-school question, at first blush, we think of a junior high-school as consisting of grades 7, 8, and 9. However, evidence adduced by plaintiffs shows this is not universally the case in Kansas.

"The court notes Regulations of the State Superintendent of Public Instruction of Kansas, filed with the Revisor of Statutes October 1, 1967, being Regulation 91-3-1 (B) provides:

" 'An accredited junior high school shall be organized to include at least two consecutive grades and may include grades six through nine. (Auth. K. S. A. 72-115, eff. Jan. 1, 1968).'

"The Court notes Rules and Regulations of the State Board of Education, filed with the Revisor of Statutes September 22, 1972, now in effect, being Regulation 91-3-1 (b) provides:

" 'An accredited Junior high school shall be organized to include at least two consecutive grades and may include grades six through nine'.

"The State Board of Education was created by K. S. A. 72-7501, *et seq;* K. S. A. 72-7513 having to do with powers of the Board; K. S. A. 72-7514 having to do with rules and regulations of the Board.

"The only legislative enactment called to the court's attention, or known to the court in the time available for research independently, on this precise point is K. S. A. 72-40a02, which was repealed in 1969. This statute stated that a junior high school is two or more years of the first three years immediately following the six years of school instruction. The interpretation of that statute would depend on the interpretation of the status of kindergarten. This statute is not helpful to plaintiffs, and in any case, is now repealed.

"Thus, it is seen that a junior high school may be any combination of at least two consecutive grades 6 through 9. It may contain 2 grades, 3 grades, or 4 grades. But, for the purpose of K. S. A. 72-8213 (e), a junior high school must have at least three (3) grades. These grades may be 6, 7, and 8. There is nothing in the law that requires a junior high school to consist of grades 7, 8 and 9.

"Turning next to the question of kindergarten.

"Kindergarten is not required, but it may be established. K. S. A. 72-8212. Evidence adduced by Plaintiffs shows that all unified school districts in Kansas have now established Kindergartens. The question then is, when a kindergarten is established, *as in the instant case,* is it a grade of elementary school?

"K. S. A. 72-7002 (c) states a 'pupil' is any person who is regularly enrolled

in any of *grades* kindergarten through twelve (12) of a district. Further K. S. A. 72-7002 (*f*) (1) provides that 'certified employees' must be employed in *grades* kindergarten through twelve (12). In the foundation act here, a kindergarten pupil is counted as ½ pupil. But, as will be seen later in the Regulations of the State Board of Education, a kindergarten is not necessarily limited to half-days. However, counting a kindergarten pupil as ½ pupil for the foundation act purposes does not make the kindergarten pupil less than a pupil.

"K. S. A. 72-8302, having to do with transportation provides '. . . Every school district shall provide or furnish transportation for every pupil who resides in the school district and who attends any of *grades* kindergarten through twelve at a school of the school district. . . .'

"(The word 'grade' or 'grades' appearing in these statutes are underlined by the court for emphasis—they are of course not emphasized in the statute itself).

"K. S. A. 72-1107 regulates the age of attendance of pupils in the public schools, provides a child must be five years of age on certain dates of any year in order to enter kindergarten, and provides completion of kindergarten entitles the pupil to enter grade one.

"K. S. A. 72-67,115, provides a school district may offer and teach courses and conduct programs for children under the age provided by law for enrollment in kindergarten, to be known as *pre-school* programs. Hence, kindergarten is school, pre-kindergarten is pre-school.

"The court notes in the Regulations of the State Superintendent of Public Instruction of Kansas, filed October 1, 1967, noted above, Regulation 91-4-1 (B) (6) recites:

" 'The kindergarten program in an accredited elementary school must be organized as separate kindergarten classes and meet the following requirements:

(*a*) The teacher must hold a certificate valid on the elementary level.

(*b*) The class must be organized on a basis of not less than 2½ clock hours nor more than three clock hours each day.'

"The court notes the Regulations of the State Board of Education, filed September 22, 1972, noted above, Regulation 91-4-1 (B) (1) provides:

" 'An accredited elementary school shall be organized to include any combination of grades K through 8, such grades 1 through 3, 4 through 6, etc. (The middle school concept of organization will be recognized as a consecutive combination of any grades 5-9).'

"And further, Regulation 91-4-1 (B) (6):

" 'The kindergarten program in an accredited elementary school must be organized as separate kindergarten classes and meet the following requirements:

(*a*) The teacher must hold a certificate valid on the elementary level.

(*b*) The class must be organized on a basis of not less than 2½ clock hours each day when in session.'

"Plaintiffs cite Welch vs Board of Education 212 Kan. 697 as authority for their position. Plaintiffs point to the language in page 705 in support of their position. A careful reading of that case shows that kindergarten was not considered at all. It was contended by appellants that grades 7 through 9 would constitute a junior high school, and grades ten through 12 would constitute a *school* within the meaning of 72-8213 (*e*), and that the trial court exceeded

its authority in requiring four grades of high school. The Court agreed with appellant's position, and correctly so. However, again, the questions in the instant case were not considered in the Welch case and Welch is not authority for plaintiffs' position.

"Plaintiffs cite K. S. A. 72-6101 (1) and K. S. A. 72-5801 (1) as authority that elementary schools means grades one to eight. Both of these statutes were repealed in 1965, and have no bearing on the instant case.

"It seems to the court that the usage of words are strained by plaintiffs. In days gone by, we didn't have kindergarten. We had elementary schools consisting of grades 1 through 8, and they were called by their respective number. We had high schools, consisting of freshmen, sophomore, junior, and senior (now called grades 9, 10, 11, and 12).

"When kindergarten became the ordinary course of events, it went by the name kindergarten. The name of grades 1 through 8 were not changed. Yet, kindergarten is a grade of elementary school now, and the grade which we call 'grade 1' is the second year of elementary school instruction, but called 'grade 1'. If we denoted grades by name instead of number, or redesignated the name of 'kindergarten' it would avoid the misleading suggestion as to what is a grade of elementary school.

"It is quite clear that kindergarten is a grade . . . in the public schools of Kansas, a grade of some level of instruction. It is not a grade of high school, nor a grade of junior high school. The rhetorical question then answers itself, and we are compelled to the conclusion that kindergarten is a grade of elementary school.

"This being the case, the change of use of the Paxico High School and Paxico Elementary School facilities contemplated by the defendant Board of Education of USD No. 329, as contained in its resolution designated Joint Exhibit No. 2, is within the lawful authority of such board under the provisions of K. S. A. 72-8213 (a)."

To us the trial court's reasoning is cogent, compelling and convincing. There is little we can add except to note briefly plaintiffs' four arguments made on appeal.

First, they say the trial court failed to give to the statutory phrases "junior high grades" and "elementary grades" their common and ordinary meaning. As we see it those terms do not, even in ordinary usage, have any such rigid and fixed meaning as plaintiffs would ascribe to them. The varying meanings employed by both the legislature and the state board of education, in the statutes and rules noted by the trial court, attest to that. We think the use of these relatively broad generic terms in the statute implies a legislative leaning toward flexibility rather than rigidity. Had specific grades been intended it would have been a simple matter for the legislature to have named them.

Second, plaintiffs point to two of our statutes which previously defined an "elementary school" for levy and finance purposes as one

offering grades one through eight (K. S. A. 72-5801 [1] and 72-6101 [1]), and one which previously defined a "junior high school" which a common school district could operate as one offering at least two of the first three years "immediately following the first six years of school instruction" (K. S. A. 72-40a02). The first definition, we note, would seem to make grades 7 and 8 "elementary" grades, as well as grade 6. But even plaintiffs do not contend that 7 and 8 may not be part of a junior high. The second definition, they say, necessarily excludes kindergarten from the "first six years." If kindergarten *is* one of the first six grades, they say, a junior high could only have lawfully been drawn from the immediately following three grades 6-8, while everyone knows that 7-9 were the commonly accepted junior high grades. Whatever force the argument might have had at the time when common school districts were first venturing into the junior high area, we think it has been supplanted by the changes wrought by unification. With the broad discretion now vested in boards of education it is no longer necessary to specifically authorize a local board to operate a junior high—nor to define it. Neither is it necessary to limit such authority to prevent common school districts from encroaching on the domain of rural high school districts, which was one of the apparent purposes of 72-40a02. (See K. S. A. 72-40a03, which contained a corresponding restriction on rural high school districts to prevent them from dipping below grade 7 for their junior high schools.)

It is suggested that these statutes formed the institutional and historical background against which 72-8213 (*e*) was drawn. We, however, attribute more significance to the fact that they have since been repealed. The repeal illustrates once again a trend toward the elimination of rigid definitions from the statutory scheme. The current statutes, as the trial court noted, refer to kindergarten as an integral part of a school system and often lump it with other "grades" as in the phrase "grades K-12" found in the Foundation Finance Act.

As a third point plaintiffs assert that regulations promulgated by the state board of education *after* 72-8213 (*e*) was enacted should not have been considered by the trial court in interpreting the statutory language. Yet we only recently said "This court has long given great weight under the doctrine of operative construction to the interpretation of a statute by the administrative body charged with enforcing the statute." (*State v. Helgerson,* 212 Kan. 412, 413,

511 P. 2d 221.) To the same effect, in *Tillotson v. Abbott,* 205 Kan. 706, 472 P. 2d 240, we said, "The interpretation placed upon a statute by an administrative agency whose duties are to carry the legislative policy into effect should be given consideration and weight when the statute is ambiguous and the intent of the legislature is not clear." (P. 713.) In any instance where there is an administrative interpretation of a statute, such interpretation must necessarily come after the statute is enacted. Administrative agencies are presumed to have expertise in their respective fields—that is the reason they are chosen by the legislature to carry out their delegated tasks. It is for this same reason that courts give weight to their interpretations of statutes falling within their area of expertise. It was proper for the trial court to do so here.

Finally, plaintiffs maintained that case law from this and other jurisdictions support their position that kindergarten is not an elementary grade. We find none of the cases cited from other jurisdictions is sufficiently analogous to be persuasive. Two California cases are sufficient to illustrate the difficulty in seeking guidance from decisions made in entirely different contexts. In *Sinnott v. Colombet,* 107 Cal. 187, 40 Pac. 329 (1895), the issue was whether a kindergarten teacher's salary could properly be paid from tax money levied for the support of the "primary schools." The court held that it could, that a kindergarten system when adopted was to be regarded "as part of the public primary schools," and that when the kindergartens were organized the court would regard them as "classes in the primary schools of the district." (107 Cal. at 192, 40 Pac. at 331.) It is but a short semantic jump from a "class" in a primary school to a "grade" in an elementary school.

On the other hand, only ten years later the same court held that kindergartens, being optional by district, were not part of California's constitutional "uniform and mandatory system of common schools" so as to count toward a district's share in the state school fund. *Los Angeles County v. Kirk,* 148 Cal. 385, 83 Pac. 250 (1905). Hence characterization for one purpose does not necessarily mandate the same characterization for another. As precedent, all the foreign cases cited suffer from this same infirmity.

In this jurisdiction we have decided just three cases under the "school closing" section of the unification act. The first, *Hand v. Board of Education,* 198 Kan. 460, 426 P. 2d 124 (1967), was essentially superseded by the enactment of K. S. A. 72-8213 (*e*), a fact

recognized by our second case, *Hensley v. Board of Education of Unified School District,* 210 Kan. 858, 504 P. 2d 184 (1972). *Hensley* held that subsection (*e*) clearly authorized a change of building use from grades 10, 11 and 12 to grades 7, 8 and 9. Such a change of use was authorized even though the board had previously been enjoined from "closing" the school. Neither *Hand* nor *Hensley* bears on the issues presented here.

The third case, *Welch v. Board of Education,* 212 Kan. 697, 512 P. 2d 358 (1973), is the one upon which plaintiffs chiefly rely. The building there in controversy was a dually owned and dually used facility, similar to that considered in *Hand.* Prior to unification it had housed grades 1-8 in one wing, 9-12 in the other. It was proposed to eliminate the high school grades (9-12) and use both wings for grades 1-8. We held, following the rationale of *Hand,* that this would amount to a "closing" of the high school "attendance facility," which could not be done without consent of the electors. To this extent we upheld the judgment of the district court. But the district court had ordered the board to continue operating a full four-year high school in the building. We modified this portion of the judgment, observing (p. 705):

"Finally, as an alternative if other specifications of error are not upheld, appellant [board of education] urges that the trial court's order mandating continuance of *four* grades of high school (nine through twelve) in the building at Pawnee Rock was overbroad and beyond the protection afforded by 72-8213 (*e*). It asserts that even if the building is treated as containing two separate attendance facilities, appellant may lawfully 'change the use' of the wing constituting the disorganized high school attendance facility by conducting therein, at its option, either three junior high school grades (seven through nine) or three high school grades (ten through twelve). Appellant indicates that as a matter of economy its choice would be to conduct three junior high grades therein, leaving six elementary grades (one through six) in the wing constituting the common school facility.

"We must agree with appellant's contention. Subsection (*e*) does permit the board of a unified district to 'change the use' of any attendance facility so long as at least three high school grades, three junior high school grades or six elementary school grades are offered in such facility."

Plaintiffs seize on this language as representing a definition by this court of what constitutes a junior high school. They read too much into it. It was the appellant board that there proposed a junior high consisting of grades seven through nine; we merely held that such a proposal was within the board's statutory authority —no more. Such a holding was preordained by *Hensley.* Had the board in *Welch* proposed a 6-8 junior high, it would have raised

the issue now presented for the first time. As it is, we are writing on a clean slate.

In the final analysis, the question is whether the board's proposed change of use is consistent with the letter and spirit of the statute. As stated above, we have concluded that it complies with the letter of the law for the reasons set out by the trial court. As to the spirit: the underlying purpose of subsection (e), as we see it, was to give the greatest possible latitude to the local boards in utilizing their school buildings, while ensuring to the electors of the disorganized districts that, unless they consent, their buildings would continue to receive substantial and not token use for school purposes. Had the board here proposed to use the Paxico grade school building for K-6 and the high school building for 7-9, plaintiffs would have no arguable grounds for complaint. The actual proposed uses, K-5 and 6-8, are real and substantial uses for school purposes, embodying a recognized structure for a school system. In our opinion the proposal comports with the spirit of the law as well as its letter.

The judgment is affirmed.

APPROVED BY THE COURT.