(646 P.2d 1141)

No. 53,397

B. J. Linnens, Charles Dannenfelser and Jimmie D. Baldwin, *Appellees,* v. Eugene Christensen, Gerry Harris, Jon Thole, Ron Kirkpatrick, Reuben Zerger, Les Allison, Ron Ludwig, the Duly Elected and Acting Members of the Board of Education of Marion and Florence Unified School District No. 408, Marion County, Kansas, *Appellants.*

Opinion filed June 17, 1982.

*D. W. Wheeler,* of Wheeler & Wheeler, of Marion, for appellants.

*James W. Wilson,* of Wichita, for appellees.

Before ABBOTT, P.J., REES and MEYER, JJ.

MEYER, J.: This is an appeal of a class action for injunction. Plaintiffs B. J. Linnens, Charles Dannenfelser, and Jimmie D. Baldwin (appellees) brought the action, as patrons of disorganized Florence Common School District U-4, alleging that the defendants, Eugene Christensen, Gerry Harris, John Thole, Ron Kirkpatrick, Reuben Zerger, Les Allison, and Ron Ludwig, the duly elected and acting Board of Education of Marion and Florence Unified School District No. 408, Marion County, Kansas (appellants or Board), had closed a school building in violation of K.S.A. 72-8213. After conducting a hearing, the district court granted appellees an injunction. From the rulings and orders of the district court, the Board appeals.

Unified School District No. 408, hereinafter called U.S.D. 408, came into existence July 1, 1966, as a result of Session Laws, 1963, Ch. 393, found at K.S.A. 72-8201 *et seq.* Thereafter, Florence Common School District U-4 was disorganized, apparently under Session Laws, 1969, ch. 312, found at K.S.A. 72-8138 *et seq.* The Florence territory was attached and made a part of U.S.D. 408, bringing with it the Florence attendance facility consisting of five buildings housing classrooms, a principal's office, and a separate gymnasium.

At the time of unification the grades taught at Florence were grades kindergarten through sixth, operated as an elementary school; and grades seventh, eighth, and ninth, operated as a junior high school. During the school year 1977-78, the junior high school dropped grade ninth and operated as a "middle school" with the two remaining grades. During the school year 1977-78, elementary grades first through sixth were held in the

building identified as the "old stone building." Kindergarten was held in another building which also housed the school's boiler, and the middle school was conducted in another building known as the "brick building."

On December 5, 1977, the state fire marshal's office inspected the "old stone building." This resulted in the issuance of a fire marshal's letter dated December 7, 1977. That letter read as follows:

"Dear Superintendent Wiebe:

"On December 5, 1977 I made a personal inspection of the above captioned facility.

"The building was found to be questionable as to the structural condition. There had been a fire in the basement which had left the floor joist heavily charred. Some of the joists were burned at the foundation to the extent they did not extend into the foundation; thus, giving the appearance they were not giving the proper support.

"On the second floor the floors sag quite badly in some areas. Since we are not structural engineers, it is impossible for us to determine why the floors are in this condition.

"Our office requests that a professional engineer survey the building to determine if it is structurally safe. If it is found to be safe, we request that the engineer provide us with a written document with his seal and signature. If the building is to remain in use after this school term, the following improvements will have to be made.

(1) All electrical wiring shall conform with the National Electric Code.

(2) The floor joist in the basement (1st floor) will have to be protected with ⅝ inch fire check sheetrock.

(3) The stairwells both to the basement and the second floor will have to be enclosed with at least one hour fire resistive construction including fire doors and closers.

(4) The windows leading onto the fire escapes will have to be replaced with doors. NOTE: the doors can be framed into the window opening, it will not be necessary to cut the walls down to floor level.

(5) All exits shall be identified with illuminated exit lights. (Including fire escapes.)

(6) The fire alarm system shall be renovated to provide an approved system.

"If there should be any questions pertaining to this survey, please contact our office.

"Your cooperation is greatly appreciated.

Sincerely,
/s/ Floyd H. Dibbern by mer
Floyd H. Dibbern
State Fire Marshal"

The Board met in regular session on December 12, 1977, and the state fire marshal's letter was reviewed, resulting in the

Board's decision to have a public meeting on December 29, 1977. This public meeting was convened, but there was no official Board action and minutes were not taken.

At the next regular Board meeting of January 9, 1978, a number of proposals were considered for the overall use of the Florence attendance facility, some of which included reassignment of grades. The Board narrowed the proposals down to two; however, the future of the "old stone building" mentioned in the fire marshal's letter was not discussed.

On January 25, 1978, at a special meeting, various plans for the overall use of the Florence attendance facility were considered, culminating in the adoption of Resolution No. 166, titled "School Organization," which provided as follows:

"Gerry Harris moved and Reuben Zerger seconded to adopt the following school organization plan; Kindergarten, grades 1 and 2 at Florence combining classes 1 and 2 one teacher to teach Kindergarten in the morning and 1st in the afternoon, second teacher to teach 1st and 2nd. Kindergarten, grades 1 and 2 to remain as is in Marion. Grades 3, 4, and 5 to be held in Marion with students being bused from Florence. Grades 6, 7 and 8 to be held in Florence in the Middle School with students being bused from Marion. Life Skills to be added to the Middle School curriculum and Home Ec. and Art dropped. Students in grades K to 2 who live in Florence or who live south of Florence may select to attend school either in Florence or Marion. Motion carried 5 - 2 (Eugene Christensen, Gerry Harris, John Thole, Ron Kirkpatrick, and Reuben Zerger in favor; Les Allison and Ron Ludwig opposing)"

Resolution No. 168, titled "Closing Buildings," was also adopted; it provided as follows:

"Ron Ludwig moved and Gerry Harris seconded to delay any action on how to dispose of the Florence Stone Building for two years. To request that any patron or organization who has a plan as to what to do with this building should submit such a plan in writing by February 1, 1980. Motion carried 7 - 0"

There was no appeal of the December 7, 1977, fire marshal's order to the State Board of Education by nine qualified electors as prescribed in K.S.A. 72-8213(g).

On March 13, 1978, appellees commenced this class action, alleging that Resolution No. 166 in effect closed the grade school at Florence, Kansas, in violation of K.S.A. 72-8140 and 72-8213; appellees prayed for an injunction preventing the implementation of said resolution.

Appellants filed their answer on March 30, 1978, and subsequently their motion to dismiss and for summary judgment. On

August 23, 1978, the motion to dismiss was granted upon the grounds of lack of jurisdiction. The district court ruled that appellees' only relief from the Board's action was appeal pursuant to K.S.A. 1981 Supp. 60-2101(*d*). Appellees appealed the district court's decision to this court, and this court found that the prayer for injunctive relief was an appropriate remedy; on September 28, 1979, the case was remanded back to the district court for further proceedings. *Linnens v. Board of Education of U.S.D. No. 408*, 3 Kan. App. 2d 662, 600 P.2d 152, *rev. denied* 227 Kan. 927 (1979).

On July 22, 1980, the district court denied appellants' motion for summary judgment and ordered that the case proceed to hearing. At this hearing it was determined, by agreement of the court and parties, that written stipulations would be submitted and that the district court would make its judgment based upon these stipulations, along with certain depositions and transcripts of previous hearings identified in the stipulations.

The district court entered its memorandum on November 4, 1980, which requested preparation of a journal entry by counsel for appellees. Subsequently, on January 16, 1981, this memorandum was amended; and, on March 26, 1981, the final journal entry was filed herein, which found in pertinent part as follows:

"2. The letter from the State Fire Marshal's Department dated December 7, 1977, was not in the form of an order, but recommended extensive remodeling or in the alternative that said structure not be used for school purposes.

"3. That at no time did the Defendant Board of Education make a finding that the cost of such restoration, repair or remodeling was unwarranted or excessive.

"4. The Defendant Board of Education did not in its minutes of December 12, 1977, or January 9, 1978, or on January 25, 1978, ever make a formal or specific finding and record said finding in its minutes that such old stone elementary school building located at Florence, Kansas, be closed or its use be discontinued.

"5. In light of the finding No. 3 above there is no basis in which any nine qualified electors, who resided in the attendance center could, prior to said next meeting of said Board of Education, appeal the order of the State Fire Marshal to the State Board of Education.

. . . . .

"7. That Resolution No. 166 does not close any school building nor does it discontinue the use of any school building. This resolution merely reassigns students and teachers, provides for busing and changes some subjects to be taught in the district.

"8. That said old stone elementary school building has not been used as an attendance facility since the close of the 1977-78 school year.

"9. The Court generally finds for the plaintiffs.

"10. That the Board of Education of Marion and Florence Unified School

District No. 408, Marion County, Kansas, has not legally colsed [*sic*] the old stone elementary building at Florence, Kansas, in compliance with Kansas law."

This same final journal entry grants a permanent injunction against U.S.D. 408, preventing third, fourth and fifth grade Florence students from being bussed to Marion, and requiring them to attend school at the Florence facility.

Appellants have appealed the district court's findings of fact, conclusions of law, and the relief granted appellees, but have filed no action to stay the enforcement of the district court's permanent injunction as provided by K.S.A. 60-262(*c*).

This case was submitted to the trial court upon an agreed stipulation of facts. All the evidence in the case being documentary, the appellate court is afforded the same opportunity to weigh and consider the evidence as the trial court. This being the case, the appellate court may review not only questions of law, but may determine de novo what the facts establish. *Victory Nat'l Bank of Nowata v. Stewart,* 6 Kan. App. 2d 847, Syl. ¶ 1, 636 P.2d 788 (1981); *Stith v. Williams,* 227 Kan. 32, Syl. ¶¶ 1, 2, 605 P.2d 86 (1980).

This entire case turns upon a single question of law—whether the above-mentioned resolutions adopted by the Board violate the requirements of K.S.A. 72-8213. Pertinent portions of 72-8213 provide as follows:

"(*a*) The board shall not close any attendance facility that was being operated at the time the unified district was organized if at least three-fourths (¾) of the territory and at least three-fourths (¾) of the taxable tangible valuation of the district which formerly owned such building is included in such unified district unless and until a majority of the resident electors within the attendance center of such attendance facility shall give their consent thereto. Such consent may be given in writing in the form of a petition, or the board may submit the question to a vote of such resident electors in the attendance center at an election which shall be conducted in the same manner as for approval of bonds of the unified district. If a majority of those voting on the question vote in favor thereof, the same shall constitute consent for the purpose of this section. The board may close any attendance facility at any time except as is otherwise provided in this act. For the purpose of this section the following terms shall have the following meanings: The term 'attendance facility' means a school building which has been property of school district disorganized pursuant to this act, but which, at the time under consideration, is owned by the unified district. The term 'attendance center' means the area around an attendance facility consisting of the territory in such unified district of the disorganized district which formerly owned such attendance facility.

. . . .

"(e) Nothing in this section shall be deemed to restrict or limit the authority of any board to change the use of any attendance facility, so long as at least three (3) high-school grades, three (3) junior high-school grades, or six (6) elementary school grades are offered in such attendance facility."

The operative words in 72-8213 are "attendance facility"; this phrase is briefly defined in subsection (a). The precise meaning of these words has also been addressed by the Kansas Supreme Court. In *Hand v. Board of Education,* 198 Kan. 460, 426 P.2d 124 (1967), the high court had this to say:

" 'Attendance facility' is defined as a school building which has been property of a school district disorganized. The meaning of the term seems clouded rather than cleared by the definition supplied in the act." (p. 463.)

"The words 'attendance facility' are not used elsewhere in the act. The definition supplied by the act (*i.e.* school building) is of some help in arriving at the correct meaning intended by the legislature. The restriction on closing is applied in case of an attendance facility *that was being operated* at the time the unified district was organized. A school is operated when a school building is available for students to attend school. Idiomatically speaking a school is referred to as being operated and a school building as being used. The term attendance facility combines two elements in its general meaning. The first refers to a place of attendance and the second a place more convenient to attend. When we consider in context a school building, a place of attendance and a place more convenient to attend it compels us to define 'attendance facility' as any high school, junior high school, or elementary grade school being operated at the time the unified district was organized." (p. 465.)

The decision in *Hand* was reached under a predecessor of K.S.A. 72-8213, K.S.A. 72-6756 (Corrick). That statute had no provision comparable to subsection (e) of 72-8213. Therefore, the court in *Hand* ruled that changing an "attendance facility" from a three-year high school to a three-year junior high school without the consent of a majority of resident electors was impermissible. K.S.A. 72-8213, and particularly subsection (e) thereof, was subsequently adopted; the effect of this was explained as follows:

"Paragraph (e) appears to be a legislative alteration of the law discussed in the *Hand* decision, and clearly permits certain classes in a school building to be discontinued without a vote of the people so long as some designated classes are maintained there." *Hensley v. Board of Education of Unified School District,* 210 Kan. 858, 863, 504 P.2d 184 (1972).

Prior to the appellants' actions, the Florence attendance facility offered grades kindergarten through eighth. After adoption of Resolution No. 166, grades kindergarten through second and grades sixth through eighth were to be offered, with grades third

through fifth being bussed to Marion. Manifestly, Resolution No. 166, calling for cross-bussing, did not close the Florence attendance facility. It did, however, alter the number of grades to be offered there. The issue is whether the change in use brought about by the adoption of Resolution No. 166 violated 72-8213 in that no consent was obtained from the resident electors. Restated, this issue boils down to whether the conditions of subsection (*e*) have been met.

Under subsection (*e*) a school board may alter the grade usage of an attendance facility without the affirmative consent of a majority of the resident electors, provided certain conditions are met—namely, that the facility continue to offer either three high school, three junior high or six elementary school grades. If these conditions are not met, or if an attendance facility is to be closed entirely, then the consent of a majority of said electors is required.

The Supreme Court, in construing subsection (*e*), has held that a great deal of latitude should be afforded the local school boards in structuring their own local school systems. The purpose of subsection (*e*) has been stated thus:

"As to the spirit: the underlying purpose of subsection (*e*), as we see it, was to give the greatest possible latitude to the local boards in utilizing their school buildings, while ensuring to the electors of the disorganized districts that, unless they consent, their buildings would continue to receive substantial and not token use for school purposes." *Meinhardt v. Board of Education*, 216 Kan. 57, 65, 531 P.2d 438 (1975).

In keeping with this general pronouncement, the courts have refused to apply a strict construction to the phrases "high school," "junior high school" and "elementary school," but have instead allowed these terms to be broadly construed. In addressing the argument that the legislature, in enacting 72-8213(*e*), intended the terms "elementary school" to mean only grades first through sixth, and "junior high" to mean only grades seventh through ninth, the court in *Meinhardt* had this to say:

"First, they say the trial court failed to give to the statutory phrases 'junior high grades' and 'elementary grades' their common and ordinary meaning. As we see it those terms do not, even in ordinary usage, have any such rigid and fixed meaning as plaintiffs would ascribe to them. The varying meanings employed by both the legislature and the state board of education, in the statutes and rules noted by the trial court, attest to that. We think the use of these relatively broad generic terms in the statute implies a legislative leaning toward flexibility rather than rigidity. Had specific grades been intended it would have been a simple matter for the legislature to have named them." 216 Kan. at 61.

Applying the rule allowing local flexibility, the *Meinhardt* court issued the following holding:

"For the purposes of K.S.A. 72-8213(*e*), kindergarten may be considered as one of the six elementary grades required to be offered after a change of use. Grade six, when incorporated into a junior high school, may be considered as one of the three required junior high grades." 216 Kan. 57, Syl. ¶ 2.

Absence of rigidity in structure also finds support in administrative regulations. K.A.R. 1981 Supp. 91-30-14a(b)(1) provides as follows: "An accredited elementary school shall be organized to include any combination of grades kindergarten through nine (9)."

The common thread running through the statutes, regulations and court opinions seems to be the tendency to afford the local school boards as free a hand as possible in the operation and organization of their individual educational systems. Each school board should be allowed to adapt its system to the peculiar situation existing in its district. Grass roots supervision of education is a historical element of our society and was within the contemplation of the legislature in enacting 72-8213. In deciding the instant case, we are conscious of and guided by this principle of local autonomy.

To reiterate the facts of the instant case, prior to adoption of Resolution No. 166, the Florence attendance facility offered nine grades, being grades kindergarten through eighth. As we construe this situation, all these grades comprised but a single elementary school—thus, all were part of a single attendance facility. Following said adoption, only six elementary grades remained, grades kindergarten through second and sixth through eighth. This would be a permissible change in use so long as subsection (*e*) does not implicitly require that the six remaining elementary school grades be consecutive. Guided by the general principle allowing considerable latitude to local school boards, we hold that subsection (*e*) has no such implied requirement. No consent is required from the resident electors to effectuate a change in use of an attendance facility, provided the school board contemplates continuance of any six elementary grades following the change.

In light of our holding above, the situation existing at the Florence attendance facility after the adoption of Resolution No. 166 complied with subsection (*e*) as a permissible change in use of said facility. Thus, no elector consent was required to make the

change. From this it follows that the trial court erred in granting its injunction. This case must be reversed and remanded with directions to the district court to dissolve its injunction and to dismiss appellees' action.

One final point should also be noted. Appellees have advanced the argument that Resolution No. 168, closing the "old stone building," was a violation of 72-8213(g), because no election of consent was held. They would uphold the trial court's injunction on that ground. This argument has no merit for two reasons. First, Resolution No. 168, standing alone, would have no effect upon grade usage at the Florence facility; it merely discontinued the use of a structurally deficient building. It was in substance unrelated to Resolution No. 166; it alone would require no cross-bussing. Thus, it was unrelated to the scope of the injunction and will not serve as validation therefor.

Second, Resolution No. 168 did in no event violate K.S.A. 72-8213(g). That subsection provides:

"Whenever the state fire marshal has (1) ordered a school building to be closed or has recommended the closing of a school building or (2) made recommendations for the repair, remodeling or restoration of a school building to make it safe, and the board of education of such school district makes a finding that the cost of such restoration, repair or remodeling is unwarranted or excessive, such board of education, under either of the foregoing circumstances, may close and discontinue the use of any such building, without complying with the requirements of subsection (a) of this section. Notwithstanding any other provision of law to the contrary, whenever the state fire marshal issues an order to which this subsection (g) would apply, the board of education of the affected school district, at its first meeting after receiving any such order, shall read the same and make the same available for public inspection, but such board of education shall take no action thereon until the next following regular meeting thereof. Any nine qualified electors who reside in the attendance center of any such attendance facility may prior to such next meeting of such board of education appeal the order of the state fire marshal to the state board of education by serving a notice of appeal to the state board of education, the state fire marshal and a copy thereof to the affected board of education. Such affected board of education shall take no further action upon the matter until it receives the order of the state board of education either sustaining or overruling the order of the state fire marshal. All such appeals shall be promptly determined by the state board of education and its order thereon shall be conclusive."

That subsection has been described in the following way:

"It is evident the legislature intended to recognize the difference between closings relating to policy decisions in which event approval of the electors in the attendance center is required under subsection (a) of 72-8213, and those closings

which relate to the condition of the building contemplated in subsection (*g*). With respect to the latter, protection against possible arbitrary action on the party [*sic*] of the State Fire Marshal or the local board of education is afforded by the provisions for the exercise of the supervisory powers of the State Board by way of appeal." *Brickell v. Board of Education,* 211 Kan. 905, 915, 508 P.2d 996 (1973).

In the instant case, the appellants received a letter from the office of the state fire marshal dated December 7, 1977. As we construe it, that letter constituted an order to the Board to cease using the "old stone building" as of the next school term *unless* certain acts, including remodeling and obtaining certificates of safety, were done. This is different than a recommendation to remodel, restore or repair which can be avoided only by taking affirmative steps, possibly involving great cost and expense. Being an order, even one avoidable by a condition subsequent, it falls within the category of 72-8213(*g*)(1) above, and no elector consent was therefore necessary to discontinue use of said building.

Reversed and remanded to the district court with directions to dissolve the injunction previously granted herein and to thereafter dismiss the class action.