(675 P.2d 375)
No. 55,307

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Delaware corporation, *Appellant,* v. DON M. HUMBERG, *Appellee.*

Opinion filed January 26, 1984.

*J. B. Reeves,* general counsel, Atchison, Topeka and Santa Fe Railway Company, of Topeka, and *Walter F. Stueckemann* and *Craig S. Crosswhite* of Stueckemann Law Offices, of Jetmore, for the appellant.

*B. A. Lightfoot,* of Jetmore, and *Tom Fiegel* of Harkness & Fiegel, of Ness City, for the appellee.

Before SPENCER, P.J., JEROME HARMAN, C.J. Retired, assigned, and STEVEN P. FLOOD, District Judge, assigned.

SPENCER, J.: This is an action to determine the rights of the parties in and to three tracts of land, consisting in all of slightly more than three acres, situated in the Northeast Quarter of Section 35, Township 18 South, Range 25 West of the 6th P.M., Ness County.

On November 11, 1886, the Chicago, Kansas and Western Railroad Company (Railroad) acquired by condemnation a 100-foot right-of-way across the quarter section of which the disputed tracts are a part. On October 31, 1887, the Challacombe Town Company (Challacombe) delivered to the Railroad its warranty deed, which included in the granting clause the right-of-way

previously condemned, the three tracts here in question, and other real estate. Plaintiff, the Atchison, Topeka and Santa Fe Railway Company, is the assignee of all the property rights previously owned by the Railroad.

Defendant Don M. Humberg is the purchaser of the real estate here involved, together with other lands, under contract with his mother Helen Humberg. He and his predecessors in title have farmed that portion of the Northeast Quarter of said section which has not been utilized for railroad purposes for a period alleged to be more than thirty years next preceding the filing of plaintiff's petition. Defendant has paid taxes on 143 acres of the Northeast Quarter of said section. The Ness County Appraiser's record indicates, "Laird and Railroad take out 16 acres." Taxes on the three tracts in question have since acquisition either been paid or otherwise provided for by plaintiff. For many years one tract has been leased by plaintiff as a site for "elevators, warehouse, office and scales." On June 24, 1981, plaintiff submitted a lease on two of the tracts as "site for cultivation purposes," to be executed by defendant. Defendant refused and this action followed.

Plaintiff did not at any time advise defendant that the three tracts in question were needed for railroad purposes. Neither did defendant nor his predecessors in title at any time advise plaintiff of any claim of ownership of the three tracts prior to this action.

Plaintiff asserts its rights in the property as assignee of the Railroad. Defendant asserts ownership under his contract of purchase and relies on the doctrine of adverse possession. Both parties moved for summary judgment. The trial court granted judgment in favor of defendant.

This case was submitted to the trial court on stipulated facts and documentary evidence. Accordingly, this court is afforded the same opportunity to evaluate the evidence as was the trial court, and to determine de novo what the facts established. *Linnens v. Christensen,* 7 Kan. App. 2d 649, 646 P.2d 1141 (1982). Regardless of the construction given a written instrument by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court. *Stanfield v. Osborne Industries, Inc.,* 232 Kan. 197, 654 P.2d 917 (1982). The parties agree on this standard of appellate review.

The trial court found plaintiff possessed fee simple title to the disputed property, which is located outside the original 100-foot right-of-way. If this is correct, defendant would have had no right to occupy the property and his continued use of it might be found to have been adverse. The issue then becomes what interest did plaintiff acquire in the property.

A railroad may acquire an interest in property under the power of eminent domain, by purchase or by voluntary grant. K.S.A. 66-501 provides in part:

"Every railway corporation shall, in addition to the powers hereinbefore conferred, have power —

. . . .

"*Second.* To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and to purchase and hold, with power to convey, real estate, for the purpose of aiding in the construction, maintenance and accommodation of its railway."

Regardless of how a railroad obtains a right-of-way, our courts have consistently held the railroad does not obtain fee simple title to the right-of-way. In *Harvest Queen Mill & Elevator Co. v. Sanders,* 189 Kan. 536, 541-42, 370 P.2d 419 (1962), the court explained:

"In the instant case the 1887 deed and those things to which we may look in its interpretation plainly show that the strips were sold by the grantor and purchased by the grantee railway company as and for a right-of-way for a railroad. This use being within the contemplation of the parties, it is to be considered as an element in the contract and limits the interest that the railroad acquired, *i.e.,* an easement for railroad purposes.

"We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. [Citation omitted.] This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's longstanding public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive condemnation proceedings. [Citations omitted.]"

In at least two cases, a railroad has been held to have acquired fee simple title to property. In *Danielson v. Woestemeyer,* 131 Kan. 796, 293 Pac. 507 (1930), a single deed conveyed two strips

of land to the railroad for one dollar and other consideration. The description of the south 100-foot strip specifically designated it for right-of-way and the court held it conveyed an easement only, regardless of the language of the deed. The description of the north 100-foot strip, however, contained no reference to its anticipated use. The court found the railroad acquired fee simple title to the north strip with full power to convey. In fact, the property had been conveyed by the railroad. See also *Nott v. Beightel,* 155 Kan. 94, 122 P.2d 747 (1942).

Plaintiff's interest in the tracts of land in question was whatever interest had been acquired by the Railroad under the warranty deed from Challacombe. A photocopy of that instrument is found in the record. It is a preprinted form apparently prepared for use by the railroad company at that time. The names of the grantor and grantee, the stated consideration of one dollar, and the description of the property were all handwritten into the instrument in a very distinctive script. On the left margin of the deed alongside the granting clause was written in what appears to be the same handwriting, "Station Grounds at Laird or Challacombe." A line drawn from the commencement of this phrase to the end of the property description indicates to us the intent that it be read as a part of the property description. There is no other stated limitation on the use to be made of the property and the deed does not contain provisions for reversion.

Plaintiff relies on the doctrine set forth in *Harvey v. Railroad Co.,* 111 Kan. 371, 207 Pac. 761 (1922). There a railroad condemned a tract containing about 30 acres of land adjoining its 100-foot right-of-way in 1879 for purposes of railway sidetracks, depots, workshops, water station and stockyards. Other than the right-of-way, the property had not been used or needed for railroad purposes. In the interim, successive fee title holders had uninterrupted use and enjoyment of the property, except for the right-of-way. The plaintiff in that case brought an action to quiet his title to the 30-acre tract under the doctrine of adverse possession. The court stated:

"Since the plaintiff holds the fee title he is of course the owner, nor did he need to bring any suit to quiet his title. [Citation omitted.] One whose property is subjected to condemnation for railway or other public uses is none the less the owner of the fee and holder of the ultimate title. He has what the law calls the servient estate. The party for whose use the condemnation was made has what is called the dominant estate. And while the fee holder, after condemnation and

compensation, may not interfere with the rights of the holder of the dominant estate, yet as owner he may still continue to use the property for any purpose which does not frustrate the public aims and ends for which the property was condemned." 111 Kan. at 372.

"Of course, so long as the railway company did not need all the property condemned, the successive fee-title holders were strictly within their rights in occupying and using it. But since they were within their rights in using and occupying the property, and because hitherto the defendant and its predecessors have not needed all the property condemned in 1879, there could be no such thing as adverse or inconsistent use, nor could there be adverse possession for fifteen years so as to found an independent title and thus bar the railway company of its rights acquired by condemnation. Before the fifteen years' bar could give rise to a right to exclude the defendant, it would be necessary to show that during that time the plaintiff had occupied the property to the prejudice of the defendant, that the defendant during that interval had needed the property for railway purposes but had been excluded therefrom by the plaintiff or his predecessors in title. It was not necessary for the railway company to make some pretended use of all the condemned property, to the exclusion of the successive fee-title holders, in order to preserve its rights. The defendant was not required to clutter up the outlying portions of the tract with old ties, rails or other junk merely to assert its dominant estate and discommode the owner of the fee. Such mere pretended use would have been an invasion of the rights of the fee-title holder, who always had and still has such rights of enjoyment, use and possession as do in no way impair or interfere with the proper, safe, convenient and efficient discharge of the defendant's duties as a public carrier." 111 Kan. at 373-74.

See also *Midland Valley R. Co. v. Corn,* 21 F.2d 96 (D. Kan. 1927); *Energy Transp. Systems, Inc. v. Union Pac. R.R. Co.,* 456 F. Supp. 154 (D. Kan. 1978), *aff'd* 606 F.2d 934 (10th Cir. 1979); *Harvest Queen Mill & Elevator Co. v. Sanders,* 189 Kan. 536; *Bowers v. Atchison, T. & S.F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913 (1925). See generally 3 Am. Jur. 2d, Adverse Possession §§ 212-213; 2 C.J.S., Adverse Possession §§ 19, 87; 74 C.J.S., Railroads § 100; Annot., 50 A.L.R. 303. The principles discussed in *Harvey* are still applied today. See *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, 105, 605 P.2d 125 (1980).

Plaintiff argues the tracts in question were initially reserved by Challacombe to be used for possible depot and freightyard improvements, and it was with this intent that the company sold the tracts to the Railroad in 1887. Plaintiff states these tracts were part and parcel of the subsequent transfer of interest to it and have always been held as possible railroad expansion areas in the future. The notation on the Challacombe deed would seem to indicate that, for the stated consideration of but one dollar, portions of the lands conveyed were intended for use as railroad

station grounds. There is no evidence in the record before us that plaintiff has abandoned the purposes for which its interests in the property were acquired or that the disputed tracts have been used in any manner substantially at odds with the purpose for which it was acquired.

We conclude the record before us dictates application of the principles set forth in *Harvest Queen* and in *Harvey;* that the conveyance of October 31, 1887, from Challacombe did not vest fee simple title in the named grantee, but rather was for railroad purposes only; and that defendant's use and occupancy thereof was not in this instance adverse to the right, title and interest of plaintiff.

Accordingly, the judgment of the trial court is reversed and this cause is remanded with directions to enter judgment for plaintiff.